**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS EASTERN DIVISION**

| | |
|---|---|
| KENNETH GORDON, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 08 C 377 |
| | ) |
| RICHARD DEVINE, et. al | ) |
| | ) |
| Defendants. | ) |

### PLAINTIFF'S RESPONSE TO DEFENDANTS DOERGE, BALTAZAR AND O'CONNOR'S MOTION TO DISMISS VARIOUS COUNTS OF PLAINTIFF'S AMENDED COMPLAINT

Plaintiff, Kenneth Gordon ("Ken"), by his attorneys, Boyd & Kummer, LLC, by way of response to the Defendants Officer Doerge, Baltazar and O'Connor's (collectively "Defendant Officers") Motion to Dismiss Various Counts of Plaintiff's Amended Complaint at Law ("Complaint") states as follows:

### INTRODUCTION

The Defendant Officers arrested and charged Ken for being in possession of Arthur Johnson's stolen car – based solely on the officer's false testimony that they observed Ken in possession of this vehicle. However, Ken did not and could not have committed this crime. The car Ken was alleged to have stolen belonged to Go America Insurance Company at the time of his arrest. Moreover, taking all reasonable inferences from the Complaint, the Car was a pile of scrap metal. Nonetheless, the Defendant Officers filed complaints and provided false testimony that Ken was in possession of a

1

stolen car belonging to Arthur Johnson – a person that never owned the car.  After spending four and one-half years in prison and nearly two years of probation for a crime he did not commit, Ken's trial judge granted Ken's post-conviction petition based on these facts, vacated the conviction and dismissed the indictment against him on June 14, 2007.  This civil rights action followed on January 16, 2008.

Defendant Officers Doerge, Baltazar and O'Connor now move to dismiss the following federal claims of Ken's Complaint: Count V – Failure to Intervene (§1983), Count VIII – Conspiracy, Count XI – Unlawful Arrest (§1983), XII – False Imprisonment, and XIII – Negligence – Willful & Wanton Conduct.[1]  The Defendant Officers contend that Count XIII Negligence – Willful & Wanton Conduct fails to state a claim upon which relief can be granted.  Defendants also contend that Counts V, VIII, X, XI, XII and XIII are time-barred.  Defendants are wrong.  Under the law of this jurisdiction and the doctrine set forth in Heck v. Humphrey, Wiley v. City of Chicago and their progeny, Ken's claims at did not accrue until Ken's conviction was overturned.  Moreover, Count XIII – Negligence – Willful & Wanton Conduct, states a claim under Illinois law.  As such, the Defendant Officers' motion to dismiss should be denied in its entirety.

## STANDARD OF REVIEW

The Defendant Officers have brought their motion to dismiss various counts of Ken's Complaint pursuant to Fed. R. Civ. Pro. 12(b)(6).  When deciding a motion to dismiss pursuant to Rule 12(b)(6), the court must accept all well-pleaded allegations in

---

[1] As will be discussed more fully below, the Defendant Officers move to dismiss Count X – Intentional Infliction of Emotional Distress ("IIED"), but offer no argument in support of this request.  Defendants also present an argument for the dismissal of Ken's Conspiracy Claim pursuant to §1983, but do not ask for its dismissal in their motion.

the complaint as true and draw all reasonable inferences in favor of the plaintiff. Fed. R. Civ. P.12(b)(6). *See* Szumny v. Am. Gen. Fin., Inc*.,* 246 F.3d 1065, 1067 (7th Cir.2001). The Federal Rules of Civil Procedure do not require a claimant to set out in detail the facts upon which he bases his claim. Fed. R. Civ. Pro 8(a)(2). *See also* Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit, 507 U.S. 163, 167 (1993). To the contrary, all the rules require is 'a short and plain statement of the claim' that will give the defendant fair notice of what the plaintiff's claim is, and the grounds upon which it rests. Id. Dismissal is proper only if it is clear from the complaint, when viewed in a light most favorable to the Plaintiff, that no set of facts consistent with its allegations would entitle the plaintiff to relief. Hishon v. King & Spalding, 467 U. S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984). Any ambiguities in the complaint are to be resolved in favor of the Plaintiff. Early v. Bankers Life & Cas. Co., 959 F.2d 75, 79 (7th Cir. 1992).

To be clear, Ken is not required to plead every fact that supports his claims. In fact, the federal rules do not require detailed factual pleadings. Fed. R. Civ. P. 8(a)(2). A complaint meets the federal pleading requirements when it provides fair notice of the nature of plaintiff's claims and the ground upon which it relies. Starling v. Chicago Police Officers, No. 98 C 7900, 2000 WL 1036301, at *5 (N.D.Ill. July 21, 2000) (*citing* Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit, 507 U. S. 163, 168, 113 S.Ct. 1160, 122 L.Ed.2d 517 (1993)). Moreover, the Supreme Court has expressly refused to apply a heightened pleading standard to § 1983 claims. Id.

## STATEMENT OF FACTS

The following well-pled facts are taken as true for purposes of deciding this motion. Szumny, 246 F.3d at 1067. On July 25, 2001, Ken was on his way to start a new

job as a helper loading trucks. Complaint, ¶ 19.[2] At approximately 4:30 a.m., the Defendant Officers stopped Ken while he was driving his automobile, at or around 931 N. Kilpatrick. C., ¶ 20. The Defendant Officers did not have probable cause to believe that Ken had committed or was committing any crime in violation of the laws of the State of Illinois. C., ¶ 21. In fact, Ken had not committed any crime. Id. Nonetheless, the Defendant Officers arrested Ken. C., ¶¶ 22. The Defendant Officers prepared a false complaint and false police report in which they stated that Ken was in possession of a stolen vehicle, namely, "Arthur Johnson's vehicle," a 1995 Oldsmobile/Buick (the "Car"). C., ¶ 23. Ken's arrest did not involve the Car. Id. Ken was never in possession of the Car. Id. Moreover, the criminal complaint was false insofar as it alleged that Ken possessed Arthur Johnson's vehicle because Arthur Johnson <u>never</u> owned the Car. C., ¶ 28 (emphasis added). In fact, at the time of Ken's arrest Go America Insurance Company owned the Car. C., ¶ 55.

In spite of this, Ken was arrested and charged for allegedly possessing a stolen vehicle belonging to "Arthur Johnson." Id. Based on the false complaint and police reports prepared by the Defendant Officers and approved by the Cook County State's Attorneys Office, the State filed a criminal complaint against Ken on July 26, 2001, which purportedly contained the signature of "Arthur Johnson." C., ¶ 24. According to the criminal complaint, Ken allegedly committed the offense of being in possession of Arthur Johnson's car. C., ¶ 25. The complaint indicated that the complainant was "Arthur Johnson/Todd Johnson." C., ¶ 26. However, neither Todd Johnson nor Arthur Johnson signed the criminal complaint. C., ¶ 27. Moreover, neither Todd Johnson nor Arthur Johnson authorized the Chicago Police Department to sign the criminal complaint

---

[2] Hereinafter "C. ¶ __"

4

on their behalf. C., ¶ 27. Nonetheless, there was a signature on the criminal complaint for Arthur Johnson/Todd Johnson. C., ¶ 26.

On August 13, 2001, Officer Doerge appeared and testified before a Grand Jury of Cook County. C., ¶ 32. Officer Doerge's testimony was a complete fabrication. Id. Officer Doerge falsely testified that he personally spoke with the owner of the allegedly stolen vehicle, Arthur Johnson. C., ¶ 34. Officer Doerge knowingly and falsely testified that Arthur Johnson told him that he did not give Ken permission or authority to possess his vehicle. C., ¶ 35.

Based on Officer Doerge's false testimony, the Grand Jury indicted Ken and the criminal complaint against Ken was superseded by indictment. C., ¶¶ 28, 36. Count I of said indictment alleged that Ken possessed Arthur Johnson's 1995 Oldsmobile on July 25, 2001, and that he knew that the vehicle was stolen or converted. C., ¶ 31.

On February 6, 2002, the Defendant State's Attorneys informed the court that the State was not ready for trial because the "victim" was not present, thereby again implying that they had spoken to Arthur Johnson when they had not. C., ¶ 42. Furthermore the Defendant State's Attorneys informed the court that the State was still seeking to get vehicle records for the Car and, therefore, needed a continuance. C., ¶ 43. On April 8, 2002, the State's Attorney, by and through co-Defendant Mearle Shearer, stated that representatives of "Bionic Auto Parts and Sales, Inc." and "Tech. Credit Union" might be called to testify. C., ¶ 47. Secretary of State records subsequently obtained demonstrated that Bionic Auto Parts & Sales, Inc., obtained a salvage certificate for the vehicle in late 2001. Id. As such, clearly, the Defendant State's Attorneys who filed their discovery

5

answer had obtained the names of these individuals from the Secretary of State Motor Vehicle Records. Id.

Despite the Defendants' intentionally false statement that they would call Arthur "Todd" Johnson, there was no one by that name relevant to the proceedings. C., ¶ 48. Defendant, Shearer also intentionally and falsely indicated to the court that Richard Devine ("Devine") and the Office of the Cook County State's Attorneys would tender any copies of automobile records it received to Ken's criminal defense counsel. Those automobile records were intentionally never tendered to defense counsel. C., ¶ 49.

On April 25, 2002, Ken's criminal matter was set for a bench trial. C., ¶ 50. At this time, and at all relevant times before the April 25, 2002, proceedings, the Defendants knew that neither Todd Johnson nor Arthur Johnson owned the Car on July 25, 2001. C., ¶ 55. In fact, based on the records of the Illinois Secretary of State in the possession or control of the Defendants, the owner of the vehicle on July 25, 2001, was Go America Auto Insurance, Inc. Id. Moreover, at the time of Ken's trial. Bionic Auto Parts and Sales, Inc., owned the Car. C., ¶ 59. Nonetheless, on April 25, 2002, based on the false testimony of the Defendant Officers and a fraudulent stipulation obtained by the Defendant State's Attorneys, Ken was found guilty of possession of a stolen motor vehicle. C., ¶ 67.[3] On May 23, 2002, Ken was sentenced to nine years of incarceration at the Illinois Department of Corrections. C., ¶ 68.

On February 23, 2004, Ken timely filed his Petition for Post-Conviction Relief ("Petition"), alleging, *inter alia*, substantial violations of Ken's civil rights through the prosecutorial misconduct of the Illinois State's Attorneys Office and violation of Brady v. Maryland, 373 U.S. 83 (1963). C., ¶ 69. Upon investigating Ken's allegations in his

---

[3] Ken was found not guilty on the charge of burglary tools (720 ILCS 5/19-2).

Petition, appointed post-conviction appellate counsel contacted the Illinois Secretary of State for a Title and Registration Search for the subject vehicle allegedly possessed by Ken. Id. The Illinois Secretary of State thereafter conducted a Title and Registration Search for a 1995 Oldsmobile Aurora, VIN #1G3GR62C8S41311039 that had a title number of T1304132027, on October 31, 2001 and an Illinois License Plate #54447PV. C., ¶ 58. Upon information received from the Secretary of State, post-conviction appellate counsel confirmed that Arthur Johnson did not ever own the Car. C., ¶ 69. "Todd Johnson" was not the owner of the subject vehicle on July 25, 2001. "Todd Johnson" surrendered Title to the vehicle on May 14, 2001, and Go America Insurance owned the subject vehicle on the date Ken was arrested. C., ¶ 59. Moreover, in September 2001 a salvage certificate was issued to Bionic Auto Parts for the Car. Id. As such, at the time of Ken's trial, Bionic Auto Parts was the owner of the Car. Id. No one named "Arthur Johnson" ever owned the Car. C., ¶ 60. Nonetheless, the Defendant Officers and the Defendant State's Attorneys, representing the City of Chicago, the County of Cook and Devine, respectively, obtained Ken's conviction by entering into a conspiracy to fabricate evidence, withhold exculpatory evidence, knowingly use false police reports, false criminal complaints and perjured testimony at Ken's bench trial on April 25, 2002. C., ¶ 66.

Ken served four and one-half (4 ½) years in prison as a result of the conviction. C., ¶ 74. Ken was released from incarceration and placed on parole for one year and eight months. C., ¶ 74. On June 14, 2007, nearly six years after Ken's wrongful arrest and prosecution, the Honorable Judge Vincent Gaughan granted Ken's Petition,

dismissed the indictment against Ken and vacated his conviction and sentence. C., ¶ 75. This lawsuit was filed on January 16, 2008.

## ARGUMENT

**I.    KEN'S FEDERAL CLAIMS AT COUNTS IV, V AND XI ARE TIMELY.**

    **A.    Pursuant to the Heck Doctrine Ken's § 1983 False Arrest Claim, Count XI, is Timely.**

The Defendant Officers have moved to dismiss Ken's claims at Count XI for a violation of Ken's rights under the Fourth Amendment through his unlawful arrest on the basis that this claim accrued at the time of Ken's arrest on July 25, 2001, and it is therefore barred under the two-year statute of limitations for claims pursuant to § 1983. However, based on the doctrine enunciated in Heck v. Humphery, 512 U.S. 477 (1994), the Defendant Officers motion to dismiss should be denied.

    Because statute of limitations is an affirmative defense, a plaintiff need not anticipate or attempt to diffuse the defense in his Complaint. United States Gypsum Co. v. Indiana Gas Co., Inc., 350 F.3d 623, 626 (7th Cir. 2003). This is so because an affirmative defense does not undercut the adequacy of claims. Deckard v. General Motors Corp., 307 F.3d 556, 560 (7th Cir. 2002). The statute of limitations for a federal civil rights claim in Illinois is two years. Ashafa v. City of Chicago, 146 F.3d 149 (7th Cir. 1998). Federal law determines when a § 1983 claim accrues. Wilson v. Giesen, 956 F.2d 738, 740 (7th Cir. 1992). The parties are in substantial agreement on these two points. The main issue of contention between the parties is whether Heck v. Humphrey, 512 U.S. 477 (1994) postpones the accrual of Ken's claim for false arrest from the date of his arrest on July 25, 2001, to the date his conviction was vacated on June 14, 2008.

Under Heck v. Humphrey, if a judgment for plaintiff on his § 1983 claim "would necessarily imply the invalidity of his conviction or sentence," the statute of limitations does not begin to run until the plaintiff's conviction or sentence has been favorably terminated. Id. at 486-87. Wiley v. City of Chicago, 361 F.3d 994 (7th Cir. 2004). As such, to toll the running of the statute of limitations, a § 1983 plaintiff first "must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus." Id. For purposes of this motion there is no dispute that Ken's conviction was reversed on June 14, 2007. (C., ¶ 75).

Ken was arrested for possession of a stolen motor vehicle based on fabricated evidence/testimony by the Defendant Officers that they observed Ken in possession of a stolen Oldsmobile belonging to Arthur Johnson. However, Ken was not in possession of the Car. This was a complete fabrication. Moreover vehicle did not belong to Arthur Johnson but rather, Go America Insurance Company. In addition, taking all reasonable inferences in favor of the Plaintiff, the car was a pile of scrap metal for which a salvage certificate was issued. The Complaint alleges that neither Todd Johnson nor Arthur Johnson authorized the Chicago Police Department to sign a criminal complaint regarding any alleged stolen vehicle. Under these facts, the success of the § 1983 claim would necessarily imply the invalidity of his conviction. Logically, a conviction for being in possession of a stolen vehicle could not stand where there was no stolen vehicle. Moreover, the conviction has been invalidated. The trial judge did, in fact, vacate the conviction based on these facts.

The facts of this case are analogous those in Wiley v. City of Chicago, 361 F.3d 994 where Wiley was arrested and convicted solely on the basis of drugs planted by the arresting officers. "[A]ny attack on the arrest would necessarily challenge the legality of a prosecution premised on the planted drugs." Id, at 997. In essence, in the case at bar, the Defendant officers fabricated or planted evidence of a stolen car and an attack on the arrest challenges the validity of any prosecution premised on the fabricated Car. In many ways, Ken's case is more egregious than those of Wiley which involved tangible drugs which were planted on the arrestee. In the case at bar, Ken was not even in possession of the Car. *See also* Finwall v. City of Chicago, 2005 WL 78948 (N.D.ILL 2005)(arrest and prosecution based solely on fabricated evidence by detectives and an anonymous tip that a sketch of a child abductor "resembled" someone the person went to school with, implied the invalidity of the potential conviction).

The Defendant Officers' fabricated testimony and evidence provided the sole basis for the arrest and subsequent conviction. As such this matter is analogous to Johnson v. Devan, 2005 WL 693259 (N.D.Ill 2005) in which the court upheld the Wiley exception where defendant officers arrested the Plaintiff based on false allegations that the officers had witnessed him burglarizing a vehicle. The fact that the defendant officers subsequently procured a signed complaint by the owner of the burglarized vehicle did not provide separate evidence to support a conviction because the complaint, which followed the arrest, was a product of the allegedly false testimony of the officers. Id at 3; *See also* Hobley v. Burge, 2004 WL 1243929 at *6-6 (N.D. Ill. 2004)(this court held that false arrest claim implied the invalidity of arrestee's conviction for arson and murder where every piece of evidence was tainted or fabricated by the detective officers

10

and allegedly stemmed from the initial illegal arrest). In the same way, Ken's arrest was premised on the false testimony of the officers that they observed Ken in possession of the car. This evidence forms the entire basis of the criminal case. Similar to Johnson, a criminal complaint was signed to give the impression of a complaining witness. However, the Complaint alleges and this Court must take as true, that neither Todd Johnson nor Arthur Johnson signed the criminal complaint or took part in the false telephone call to Ken's public defender. The Complaint states that the criminal complaint and the phone call were fabricated. However, even if they had been true, under Johnson and Burge, this would have been a product of the officer's false testimony that he had observed Ken in possession of the Car. Thus, the officer's fabricated testimony that they observed Ken in possession of the Car was the lynch pin of the criminal case which fell apart after this deception was exposed.

The cases cited by the Defendants are distinguishable because those cases did not involve an individual who was actually innocent and whose conviction was set aside on that basis. This is not a case where a conviction was set aside based in a confession which was suppressed or where a prosecutor simply decided not to prosecute. This is not a case where a conviction could be obtained regardless of the Fourth Amendment violation during the arrest based on independent sources, inevitable discovery or harmless error. Thus, the concerns raised in this regard in Heck are simply not implicated in this case. Likewise, there is no risk or concern of inconsistent verdicts from the criminal court and this court. Thus, this case falls squarely within the Wiley exception pursuant to the Heck doctrine.

11

In short, any success by Ken with his civil rights claims against the Defendant Officers for their actions would necessarily imply that Ken's conviction was invalid. As such, these federal civil rights claims accrued on the date that Ken's conviction was overturned, on June 14, 2007. Heck, 512 U.S. 489-90; *See also* Wiley v. City of Chicago, 361 F.3d 994 4); Santiago v. Marquez, 1998 WL 160878 at * 2 (N.D. Ill. 1998)(if attack on arrest would challenge the only evidence supporting conviction, claim did not begin to accrue until the charges were dismissed); Akpulonu v. McGowan, 2004 WL 2034084 (N.D.Ill)*10 (success of false arrest claim based soley on false testimony regarding moving violations, that a car was parked at a fire hydrant and a false report and tickets based on the same, would invalidate the prosecution of the tickets) and Hobley v. Burge, 2004 WL 1243929 at *6-6 (N.D. Ill. 2004).

Ken timely filed his false arrest claim within two-years of the reversal of his conviction on June 14, 2007. As such, the Defendant Officers motion to dismiss this should be denied.

### B. Ken's § 1983 Conspiracy and Failure To Intervene Claims Are Timely.

Similarly, Ken's federal civil rights claims for failure to intervene and conspiracy to violate Ken's civil rights have been timely filed. Ken has pled that the Defendant Officers entered into a conspiracy to deprive Ken of his constitutional rights – namely, the right to due process. Counts IV (§1983 Conspiracy) and V (§1983 Failure to Intervene) each incorporate Ken's §1983 Due Process claim. Ken has alleged that the Defendant Officers affected these civil rights violations by deliberately charging Ken of crimes he was innocent of, creating a false criminal complaint and police reports, and

12

offering evidence in the form of perjured testimony to secure Ken's indictment and conviction. C., ¶¶ 23, 27, 34-36, 66-67, 87, 107-08.

Any effort to prosecute Ken's Conspiracy and Failure to Intervene claims would have necessarily impugned the validity of Ken's criminal charges and conviction because they were based solely on the Defendant Officers' fabricated testimony as discussed above. Accordingly, these claims are timely under the Heck doctrine. *See* Section I(B) *supra*. Moreover, Ken's § 1983 conspiracy claim is also based in part on the actions of the Defendant Officers in maliciously prosecuting Ken. As such, these claims did not accrue until Ken's malicious prosecution claim accrued in June 2007. *See* Castillo v. Zuniga, 2002 WL 398519 at * 10 (N.D. Ill. 2002); Newsome v. James, 968 F.Supp. 1318, 1325 (N.D. Ill. 1997). Accordingly, as Ken's Due Process claims for the deprivation of a fair trial, false arrest and malicious prosecution claims are timely, the conspiracy to effect the same, as well as any failure to intervene with respect such action is also timely.

## II. PLAINTIFF'S STATE LAW CLAIMS ARE TIMELY.

### A. Defendants State Law Conspiracy And False Imprisonment Claims Are Timely.

Ken has brought claims against the Defendant officers at Count VIII for state law conspiracy and at Count XII for state law false imprisonment. Each of these claims arises out of the Defendant Officers' conduct in maliciously prosecuting Ken through their false police reports and fabricated evidence in the form of their perjured testimony. The Defendant Officers do not argue that Ken's state law malicious prosecution claims are time-barred. This is because under settled law, such claims do not accrue until Ken's

conviction is overturned.  *See* Treece v. Village of Naperville, 903 F. Supp. 1251, 1257 (N.D. Ill. 1995).  Nonetheless, the Defendant officers contend that these other state law claims arising out of the same acts complained of fail.

What the Defendant Officers miss is that Ken's false arrest and conspiracy claims each arise out of a conspiracy by the Defendant Officers, State's Attorneys and public entities to deprive him of his constitutional rights by falsely arresting and maliciously prosecuting him to conviction for a crime he did not commit.  The conspiracy alleged in the Complaint constitutes a continuing violation that began upon Ken's arrest in 2001 and continued through Ken's petition for post-conviction relief, until the date that Ken's conviction was overturned in June 2007.  As such, these claims did not accrue prior to his conviction being overturned in June 2007.  *See e.g.* Wolf v. City of Chicago Heights, 828 F. Supp. 520 (N.D. Ill. 1993)(statute of limitations under continuing violation theory begins to run from the date of the last injury or tortious act).  In short, the accrual of Ken's conspiracy and false arrest claims mirror that of his malicious prosecution claims – on the date that Ken's conviction was overturned.

Moreover, each of these claims arise out of the same conduct on the part of the Defendant Officers – the initiation of charges against Ken through the execution of a false complaint, their fabricated and perjured testimony against him in the grand jury proceedings, and their false testimony against Ken at trial.  As such, each of these claims required the invalidity of Ken's conviction to accrue.   Accordingly, Ken could not have brought these claims prior to June 14, 2007.  Ken brought them in January 2008.  As such, these claims are timely and the Defendant Officers' motion to dismiss them should be denied.

14

Defendants cite Austin v. House of Vision, 101 Ill. App. 2d 251, 255, 243 N.E.2d 297, 299 (1st Dist. 1968) for the proposition that a tort action for conspiracy accrues at the date on which a party's personal or property right is violated. However, the Austin decision limits itself to instances in which there is only a single overt act causing harm. Ken's conspiracy claims allege a series of acts ranging from the suppression of exculpatory evidence and fabrication of inculpatory evidence through perjured testimony, to the subsequent failure to redress Plaintiff's wrongful conviction. Ken alleges much more than a single overt act. As such, under Illinois law, Ken has pleaded the prima facie elements of a civil conspiracy claim by alleging an agreement to commit an unlawful act followed by the commission of an overt and tortious act in furtherance of the agreement. Adcock v. Brakegate Ltd., 164 Ill. 2d 54, 63, 645 N.E.2d 888, 894 (1994). Ken has timely stated claims for state law conspiracy and false imprisonment and the Defendant Officers' motion to dismiss these claims should be denied.

### B. Defendant Officers Offer No Argument In Support Of Their Motion To Dismiss Count X.

In their brief and supporting memorandum the Defendant Officers request that this Court dismiss Count X – Intentional Infliction of Emotional Distress ("IIED"), without providing any authority or argument in support of the request. *See* Defendant's Brief, pp. 1, 12, 14. Because statute of limitations is an affirmative defense, dismissal under 12(b)(6) is appropriate if the cause of action is indisputably time-barred. Clark v. City of Braidwood, 318 F.3d 764 (7th Cir. 2003). The Defendant Officers have not fulfilled this standard, as they have provided no basis for the dismissal of Count X.

If the Defendant Officers attempt to "bootstrap" the dismissal into their reply brief, this Court should note that under settled law a cause of action for IIED does not

15

accrue until the state criminal proceedings are terminated. *See* Bergstrom v. McSweeney, 294 F.Supp.2d 961, 969 (N.D.Ill.2003); Castillo v. Zuniga, No. 01-616, 2002 WL 398519, at *12 (N.D.Ill. Mar.14, 2002); Evans v. City of Chicago, No. 00-7222, 2001 WL 1028401, at *14 (N.D.Ill. Sep.6, 2001); Treece v. Village of Naperville, 903 F.Supp. 1251, 1259 (N.D.Ill.1995). The statute of limitations did not commence until Ken's conviction was overturned and the criminal case against Ken was terminated on June 14, 2007. Ken's claims were filed within one year of the reversal of Ken's conviction. As such, Ken's claim is not barred under the one-year limitations period set forth in the Illinois Local Government and Governmental Employees Tort Immunity Act, 745 Ill. Comp. Stat. 10/8-101. Accordingly, dismissal of Ken's IIED claim on statute of limitations grounds is unwarranted. *See also* Hobley v. Burge, 2004 WL 1243929 (N.D. Ill. 2004).

### C. Count XIII – Negligence – Willful And Wanton Conduct States A Viable And Timely Cause Of Action

In a rather odd and illogical argument the Defendant Officers contend that Count XIII – Negligence – Willful and Wanton Conduct must be dismissed. Defendants contend (without authority) that a negligence claim cannot be based on willful and wanton conduct. They then also contend that willful and wanton conduct does not constitute a separate cause of action. Finally, they contend that any such cause of action would be barred by the statute of limitations provided for in the Tort Immunity Act. None of these arguments call for the dismissal of Count XIII, which is properly pled.

The Illinois Supreme Court has recognized actions for willful and wanton negligence. Ziarko v. Soo Line Railroad, 161 Ill. 2d 267, 641 N.E.2d 402 (1994); and Oropeza v. Board of Eduction of the City of Chicago, 238 Ill. App. 3d 399, 606 N.E.2d

16

482 (1st Dist. 1992).  The Ziarko Court pointed out that Illinois case law sometimes uses interchangeably the terms "willful & wanton negligence," "gross negligence," and "willful & wanton conduct."  Ziarko, 161 Ill. 2d at 274, 641 N.E.2d at 406.  The Oropeza Court (*citing* the Illinois Supreme Court in Lynch v. Board of Education, 82 Ill. 2d 415, 412 N.E.2d 477 (1980))  explained that "willful and wanton" negligence means "failure after knowledge of impending danger, to exercise ordinary care to prevent it or a failure to discover the danger through recklessness or carelessness when it should have been discovered through ordinary care." Oropeza, 238 Ill. App. 3d at 402, 606 N.E.2d at 485.  *See also generally* Abrams v. City of Chicago, 211 Ill. 2d 251, 811 N.E.2d 670 (2004)(setting forth elements of claim for willful and wanton negligence under Illinois law).

   Ken has brought a claim against the Defendant Officers for willful & wanton negligence.  The Defendant Officers contend that Ken cannot assert this claim against them because the Defendant Officers are immune from claims sounding in negligence under the Tort Immunity Act, 745 ILCS 10/1 *et. seq.*  The Act provides that a public employee is immune from liability for any act or omission in the execution or enforcement of any law unless such act or omission constitutes willful and wanton conduct.  745 ILCS 10/2-202(emphasis added). The Defendant Officers argue that the categories of "negligent" acts and willful and wanton" acts are somehow mutually exclusive.  The Defendant Officers are wrong.

   Contrary to the Defendant Officers' assertions, Count XIII presents a valid cause of action under Illinois law for willful & wanton misconduct – a heightened degree of negligence.  This claim alleges that the Defendant Officers willfully and wantonly

17

prepared false police reports and complaints and fabricated evidence in the form of their testimony at Ken's grand jury proceedings and trial. Moreover, the Defendant Officers present no authority for the proposition that these claims accrued prior to June 2007. Accordingly, the Defendant Officers' motion to dismiss Count XII should be denied.

## CONCLUSION

From July 2001 until June 2007, the Defendant Officers engaged in a conspiracy to cause Plaintiff Kenneth Gordon to be convicted by the Circuit Court of Cook County of possession of a stolen motor vehicle – a crime he did not commit. The Defendant Officers achieved this end through the only evidence offered to support Ken's conviction – their fabricated story about a stolen car. As a result of the conspiracy, Ken endured four and one half (4 ½) years of wrongful incarceration, followed by one year and eight months of parole. When Ken's conviction was finally overturned Ken promptly brought this lawsuit. The allegations of Ken's Complaint state timely claims under Illinois law. As such, the Defendant Officer's motion to dismiss should be denied in its entirety.[4]

/s/ Scott W. Kummer
One of Plaintiff's Attorneys

SCOTT W. KUMMER
JULIET E. BOYD
BOYD & KUMMER, LLC
20 S. Clark Street, Suite 500
Chicago, IL 60603
312-363-6100
312-372-7076 (FAX)
ARDC No. 6255657
ARDC No. 6273348

---

[4] The Defendant Officers should also be required to answer all Counts of Ken's Complaint. To date, the Defendant Officers have not filed an answer to the Amended Complaint.