**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS EASTERN DIVISION**

| | |
|---|---|
| KENNETH GORDON, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 08 C 377 |
| | ) |
| RICHARD DEVINE, et. al | ) |
| | ) |
| Defendants. | ) |
| | ) |
| | ) |
| | ) |
| | ) |
| | ) |

**PLAINTIFF'S RESPONSE TO DEFENDANTS RICHARD DEVINE, MERLE**
**SCHEARER, MARK ERTLER, RIVANDA DOSS, ANDREW DALKIN,**
**CELESTE STACK AND COOK COUNTY'S MOTION TO DISMISS**
**PLAINTIFF'S AMENDED COMPLAINT**

Plaintiff, Kenneth Gordon ("Ken"), by his attorneys, Boyd & Kummer, LLC, by

way of response to the Defendants Richard Devine, Merle Shearer, Mark Ertler, Rivanda

Doss, Andrew Dalkin, Celeste Stack and Cook County's (collectively SAO Defendants)

motion to dismiss Plaintiff's Amended Complaint ("Complaint") states as follows:

**INTRODUCTION**

This lawsuit involves fabrication of evidence and the cover-up of a completely

unfounded arrest by the Chicago Police Department on the part of the SAO Defendants.

The SAO Defendants, after obtaining irrefutable evidence that Ken was innocent,

continued to prosecute him for a crime they knew he did not and could not have

committed.  They did this through fabricating a phony witness, manufacturing a story

regarding a phony car and failing to turn over evidence that irrefutably demonstrated

Ken's innocence.  In doing so, the SAO Defendants intentionally caused an innocent man

to be convicted of a crime he did not commit.  As a result, Ken served four and ½ years in prison.

The SAO Defendants' misconduct did not end there.  Once Ken's post-conviction attorney learned of the unspeakable injustice that had taken place, he promptly filed petitions for post conviction relief ("PCR") on Ken's behalf that included the irrefutable evidence of Ken's innocence.  Instead of recognizing the errors of their ways, the SAO Defendants purposefully delayed the adjudication of Ken's PCR for three years, in the process, acting as *de facto* defense attorney's for the SAO Defendants by conditioning any release of Ken on a waiver of his civil rights claims against them.

The SAO Defendants knew this lawsuit was forthcoming.  They also knew Ken had served a lengthy prison sentence for a crime he did not commit.

The SAO Defendants now claim they should be immune from prosecution - in spite of the fact that none of the conduct complained of served any prosecutorial function whatsoever - and that this Court lacks jurisdiction over Ken's claims in spite of settled law to the contrary.  They are simply wrong.

## STANDARD OF REVIEW

The SAO Defendants have brought their motion to dismiss various counts of Ken's Complaint pursuant to Fed. R. Civ. Pro. 12(b)(6).  When deciding a motion to dismiss pursuant to Rule 12(b)(6), the court must accept all well-pleaded allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff. Fed. R. Civ. P.12(b)(6). *See* Szumny v. Am. Gen. Fin., Inc*.,* 246 F.3d 1065, 1067 (7th Cir.2001). The Federal Rules of Civil Procedure do not require a claimant to set out in detail the facts upon which he bases his claim.  Fed. R. Civ. Pro 8(a)(2).  *See also*  Leatherman v.

<u>Tarrant County Narcotics Intelligence and Coordination Unit</u>, 507 U.S. 163, 167 (1993). To the contrary, all the rules require is 'a short and plain statement of the claim' that will give the defendant fair notice of what the plaintiff's claim is, and the grounds upon which it rests. <u>Id</u>. Dismissal is proper only if it is clear from the complaint, when viewed in a light most favorable to the Plaintiff, that no set of facts consistent with its allegations would entitle the plaintiff to relief. <u>Hishon v. King & Spalding</u>, 467 U. S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984). Any ambiguities in the complaint are to be resolved in favor of the Plaintiff. <u>Early v. Bankers Life & Cas. Co.</u>, 959 F.2d 75, 79 (7th Cir. 1992).

To be clear, Ken is not required to plead every fact that supports his claims. In fact, the federal rules do not require detailed factual pleadings. Fed. R. Civ. P. 8(a)(2). A complaint meets the federal pleading requirements when it provides fair notice of the nature of plaintiff's claims and the ground upon which it relies. <u>Starling v. Chicago Police Officers</u>, No. 98 C 7900, 2000 WL 1036301, at *5 (N.D.Ill. July 21, 2000) (*citing* <u>Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit</u>, 507 U. S. 163, 168, 113 S.Ct. 1160, 122 L.Ed.2d 517 (1993)). Moreover, the Supreme Court has expressly refused to apply a heightened pleading standard to § 1983 claims. <u>Id</u>.

## STATEMENT OF FACTS

The following well-pled facts are taken as true for purposes of deciding this motion. <u>Szumny</u>, 246 F.3d at 1067.

**Ken's Arrest**

On July 25, 2001, Ken was on his way to start a new job as a helper loading trucks. Complaint, ¶ 19.[1]  At approximately 4:30 a.m., the Defendant Officers stopped Ken while he was driving his automobile, at or around 931 N. Kilpatrick. C., ¶ 20.  The Defendant Officers did not have probable cause to believe that Ken had committed or was committing any crime in violation of the laws of the State of Illinois. C., ¶ 21.  In fact, Ken had not committed any crime. Id. Nonetheless, the Defendant Officers arrested Ken and prepared a false complaint and false police report in which they stated that Ken was in possession of a stolen vehicle, namely, "Arthur Johnson's vehicle," a 1995 Oldsmobile/Buick (the "Car"). C., ¶¶ 22, 23.  To be clear, Ken's interactions with the police did not involve the Car and Ken was never in possession of the Car.  Id.

Moreover, the criminal complaint was false insofar as it alleged that Ken possessed Arthur Johnson's vehicle. Co. ¶ 28.  Arthur Johnson never owned the Car. C., ¶ 28 (emphasis added).  In fact, at the time of Ken's arrest Go America Insurance Company owned the Car. C., ¶ 55.

In spite of this, Ken was arrested and charged for allegedly possessing a stolen vehicle belonging to "Arthur Johnson."  Id.  Based on the false complaint and police reports prepared by the Defendant Officers and approved by the SAO Defendants, a criminal complaint was filed against Ken on July 26, 2001, which purportedly contained the signature of "Arthur Johnson." C., ¶ 24.  According to the criminal complaint, Ken allegedly committed the offense of being in possession of Arthur Johnson's car. C., ¶ 25.  The criminal complaint indicated that the complainant was "Arthur Johnson/Todd Johnson." C., ¶ 26.  However, neither Todd Johnson nor Arthur Johnson signed the

---

[1] Hereinafter "C. ¶ __"

criminal complaint. C., ¶ 27. Moreover, neither Todd Johnson nor Arthur Johnson authorized the Chicago Police Department to sign the criminal complaint on their behalf. C., ¶ 27. Nonetheless, there was a signature on the criminal complaint for Arthur Johnson/Todd Johnson. C., ¶ 26. The Defendant Officers and SAO Defendants, representing the City of Chicago, the County of Cook and Richard Devine, respectively, entered into a conspiracy to manufacture false evidence, withhold exculpatory evidence, knowingly use false police reports, false criminal complaints, false testimony and deceptive conduct in order to convict Ken at his bench trial on April 25, 2002. C. ¶ 66.

**Grand Jury Proceedings**

On August 13, 2001, Officer Doerge appeared and testified before a Grand Jury. C., ¶ 32. The SAO Defendants, under the direction of Defendant Richard Devine, directed Officer Doerge's testimony. C., ¶ 9. Officer Doerge's testimony was a complete fabrication. C., ¶ 33. At the direction of the SAO Defendants, Officer Doerge falsely testified that he personally spoke with the owner of the allegedly stolen vehicle, Arthur Johnson. C., ¶ 34. Officer Doerge knowingly and falsely testified that Arthur Johnson told him that he did not give Ken permission or authority to possess his vehicle. C., ¶ 35.

Based on Officer Doerge's false testimony, the Grand Jury indicted Ken and the criminal complaint against Ken was superseded by indictment. C., ¶¶ 28, 36. Count I of said indictment alleged that Ken possessed Arthur Johnson's 1995 Oldsmobile on July 25, 2001, and that he knew that the vehicle was stolen or converted. C., ¶ 31.

**Ken's Criminal Proceedings**

On February 6, 2002, the SAO Defendants informed the court that the State was not ready for trial because the "victim" was not present, thereby again implying that they

had spoken to Arthur Johnson when they had not.  C., ¶ 42.  Furthermore the SAO Defendants informed the court that the State was still seeking to get vehicle records for the Car and, therefore, needed a continuance.  C., ¶ 43.   On April 8, 2002, the SAO Defendants, by and through co-Defendant Mearle Shearer, stated that representatives of "Bionic Auto Parts and Sales, Inc." and "Tech. Credit Union" might be called to testify. C., ¶ 47.  Secretary of State records subsequently obtained demonstrated that Bionic Auto Parts & Sales, Inc., obtained a salvage certificate for the vehicle in late 2001.  Id.  As such, clearly, the SAO Defendants who filed their discovery answer had obtained the names of these individuals from the Secretary of State Motor Vehicle Records.  Id.   The SAO Defendants also advised the Court that they may call "Arthur 'Todd' Johnson" to testify as a witness, in spite of the fact that the SAO Defendants knew no such person existed and thus, did not own the Car or fail to consent to use the Car.  C. ¶ 45.

Despite the Defendants' intentionally false statement that they would call Arthur "Todd" Johnson, there was no one by that name relevant to the proceedings.  C., ¶ 48. Defendant Shearer also intentionally and falsely indicated to the court that Richard Devine ("Devine"), the Office of the Cook County State's Attorneys and SAO Defendants would tender any copies of automobile records it received to Ken's criminal defense counsel.  Those automobile records were intentionally never tendered to defense counsel in violation of Brady v. Maryland.  C., ¶¶ 47, 49.

**Ken's Criminal Trial**

On April 25, 2002, Ken's criminal matter was set for a bench trial.  C., ¶ 50. Shearer represented Devine, the Office of the Cook County State's Attorney and the SAO Defendants. C., ¶ 50.  At this time, and at all relevant times before the April 25, 2002,

proceedings, the SAO Defendants knew that neither Todd Johnson nor Arthur Johnson owned the Car on July 25, 2001. C., ¶ 55. In fact, based on the records of the Illinois Secretary of State in the possession or control of the Defendants, the owner of the vehicle on July 25, 2001, was Go America Auto Insurance, Inc. Id. At the time of Ken's trial, Bionic Auto Parts and Sales, Inc., owned the Car. C., ¶ 59.

In spite of the fact that the SAO Defendants knew that neither Arthur Johnson nor Todd Johnson owned the Car, just prior to the bench trial on April 25, 2002, outside of the courtroom and off the record Shearer intentionally and falsely informed Ken's public defender, Craig Rosenthal ("Rosenthal") that the "owner" of the vehicle, "Todd Johnson," was on "phone hold," was willing and available to testify at trial that day and had no criminal background. C. ¶ 51. Shearer knew these representations were false when he made them. Id. Shearer made these misrepresentations outside of Court, while acting in an investigative and/or administrative capacity. Id. Shearer deliberately made these misrepresentations to defraud Rosenthal and the Court into believing that the owner of the vehicle was Todd Johnson and that he would be available to testify at trial that day, in an effort to induce Rosenthal to enter into a false stipulation regarding the element of ownership. Id. Rosenthal spoke with the individual Shearer identified as Todd Johnson on "phone hold." C. ¶ 52. Shearer arranged the call. Id. That individual falsely and intentionally identified himself as "Todd Johnson," the "owner" of the Car and stipulated that he did not know Ken or give Ken permission to use the Car. Id. This individual related to Rosenthal that the Car was in perfect condition at the time that the car was stolen. Id. This entire communication, constructed by Shearer, was a fabrication of evidence. Id. Based upon the false representations made by Shearer and the fabrications

contained in the telephone conversation, Rosenthal agreed to stipulate to the ownership/lack of consent element at Ken's criminal bench trial. C. ¶ 53. In furtherance of this fraud on the Court, Shearer entered a stipulation into the Court Record indicating that he had spoken with the owner of the Car, Todd Johnson, and that if called to testify, Johnson would state that he was the owner of the Car, that the Car was in working condition, and that he had not given Ken permission to drive or use the Car. Id. At the time that this stipulation was read into the Court record Shearer knew that each of these representations were false. Id.

Specifically, at this time and at all relevant times before the April 25, 2002, proceedings, the SAO Defendants, including, but not limited to Shearer, knew that neither Todd Johnson nor Arthur Johnson was the person identified as such on the telephone and that neither individual owned the Car on July 25, 2001. C., ¶ 55. In fact, based on the records of the Illinois Secretary of State in the possession or control of the Defendants, the owner of the vehicle on July 25, 2001, was Go America Auto Insurance, Inc. Id. Nonetheless, the SAO Defendants proceeded to trial and obtained Ken's conviction based on this fraudulent representation and stipulation. Id. The SAO Defendants never turned over any of the vehicle records they obtained from the Illinois Secretary of State to Ken's counsel. C. ¶ 56. These records contained material, exculpatory evidence that would have led to Ken's exoneration. Id. The failure of the SAO Defendants to turn this information over to defense counsel constituted a violation of Brady v. Maryland. Id.

**Ken's Conviction And Sentence**

Nonetheless, on April 25, 2002, based on the false testimony of the Defendant Officers and a fraudulent stipulation obtained by the Defendant State's Attorneys, Ken was found guilty of possession of a stolen motor vehicle. C., ¶ 67.[2]  On May 23, 2002, Ken was sentenced to nine years of incarceration at the Illinois Department of Corrections for a crime he did not and could not have committed. C., ¶ 68.

**Post-Conviction Proceedings**

On February 23, 2004, Ken timely filed his Petition for Post-Conviction Relief ("Petition"), alleging, *inter alia*, substantial violations of Ken's civil rights through the prosecutorial misconduct of the SAO Defendants and violations of Brady v. Maryland, 373 U.S. 83 (1963). C., ¶ 69.  Upon investigating Ken's allegations in his Petition, appointed post-conviction appellate counsel contacted the Illinois Secretary of State for a Title and Registration Search for the subject vehicle allegedly possessed by Ken. Id.  The Illinois Secretary of State records confirmed that Arthur Johnson never owned the Car. C., ¶ 69 (emphasis added).  Moreover, Todd Johnson was not the owner of the subject vehicle on July 25, 2001. Todd Johnson surrendered Title to the vehicle on May 14, 2001, and Go America Insurance owned the Car on the date Ken was arrested. C., ¶ 59. Moreover, in September 2001 a salvage certificate was issued to Bionic Auto Parts for the Car. Id.  As such, at the time of Ken's trial, Bionic Auto Parts was the owner of the Car. Id.  No one named "Arthur Johnson" ever owned the Car. C., ¶ 60.  Nonetheless, the SAO Defendants obtained Ken's conviction by entering into a conspiracy to fabricate evidence, withhold exculpatory evidence, knowingly use false police reports, false

---

[2] Ken was found not guilty on the charge of burglary tools (720 ILCS 5/19-2).

criminal complaints, perjured testimony and use this fabricated evidence in the form of the telephone call at Ken's bench trial on April 25, 2002. C., ¶ 66.

**The Cover-Up**

Upon receiving the Petition, the SAO Defendants were again apprised of the fact that Ken had been wrongfully convicted for a crime he did not commit. C. ¶ 70. The SAO Defendants that were assigned to Ken's case included Defendants Ertler, Dalkin and Doss, who reported to Defendant Stack. C. ¶ 71. The SAO Defendants had the opportunity to exonerate Ken, but they did nothing to assist Ken in achieving justice. Id. Instead, these defendants engaged in a course of conduct designed to delay Ken's post-conviction proceedings and vigorously oppose serving the interests of justice in an effort to protect their own interests, in spite of the fact that they knew that gross prosecutorial misconduct had taken place and that Ken was innocent of the crime he was convicted of. Id. In this regard, the SAO Defendants were not acting to perform a prosecutorial function, but rather, acting as *de facto* defense attorneys endeavoring to limit their own liability. Id. Moreover, in an outrageous effort to conceal this misconduct the SAO Defendants made a conditional offer to release Ken if, and only if he would waive any potential civil rights claims he had against them and pled guilty to another crime he did not commit, in violation of their ethical duties under the Illinois Rules of Professional Conduct. C., ¶ 72. The acts complained of by the SAO Defendants in connection with their conduct described above were taken outside of the scope of their prosecutorial functions, as Ken had already been convicted. Id. In short, the SAO Defendants purposefully concealed and delayed Ken's post-conviction proceedings in an effort to protect themselves from embarrassment, as well as potential liability. Id.

Ken served four and one-half (4 ½) years in prison as a result of the wrongful conviction. C., ¶ 74. Ken was released from incarceration and placed on parole for one year and eight months. Id. On June 14, 2007, more than three years after Ken filed the PCR which contained irrefutable evidence of Ken's actual innocence and nearly six years after Ken's wrongful arrest and prosecution, the Honorable Judge Vincent Gaughan granted Ken's Petition, dismissed the indictment against Ken and vacated his conviction and sentence. C., ¶ 75. This lawsuit was filed on January 16, 2008.

## ARGUMENT

### I.    THE SAO DEFENDANTS ARE NOT ENTITLED TO ABSOLUTE PROSECUTORIAL IMMUNITY FROM KEN'S CLAIMS

#### A.    KEN'S § 1983 CLAIMS ARE NOT BARRED BY PROSECUTORIAL IMMUNITY.

The SAO Defendants are not entitled to absolute immunity for their actions in conspiring to obtain the conviction of Ken through their use of fabricated evidence, fabricating witnesses and perpetrating a fraud on Ken's counsel and the Court. The SAO Defendants should not be entitled to absolute immunity for their outrageous efforts to delay Ken's PCR proceedings for years, and cover-up their wrongdoing by conditioning any agreement to release Ken on a waiver of his civil rights claims against them. The SAO Defendants took all of the acts complained of in the face of undisputable evidence of Ken's actual innocence. To be clear, from the time that the SAO Defendants learned of Ken's actual innocence until his eventual release they were acting as *de facto* defense attorneys - defending themselves from embarrassment and potential liability.

Absolute immunity from civil liability for damages is of a rare and exceptional character. Auriemma v. Montgomery, 860 F.2d 273- 277-78 (7th Cir. 1988), *cert. denied*, 492 U. S. 906 (1989). The presumption is that qualified, rather than absolute immunity is sufficient to protect government officials in the exercise of their duties. Burns v. Reed, 500 U.S. 478 at 486-87 (1991). Immunity is an affirmative defense and notice pleading does not require a plaintiff to anticipate it in his pleadings. Gomez v. Toledo, 466 U. S. 635, 640 (1980); Jacobs, 215 F.3d at 765 n. 3. The burden to prove that immunity exists is on the party seeking the immunity. Buckley, 509 U. S. 259, 269 (1993). Moreover, there is no common law tradition allowing absolute immunity for fabrication of evidence. Id.

The purposes of immunizing a prosecutor from suit are the same as those that underlie the immunity of judges and grand jurors acting within the scope of their duties. Milstein v. Cooley, 257 F.3d 1004, 1007 (*citing* Burns, 500 U. S. at 485 (1991); Imbler v. Pachtman, 424 U. S. 409, 422-23 (1976)). Absolute immunity protects the prosecutor's role as an advocate and is not grounded in any special "esteem for those who perform these functions, and certainly not from a desire to shield abuses of office, but because any lesser degree of immunity could impair the judicial process itself." Kalina v. Fletcher, 522 U. S. 118, 127 (1997).

The Supreme Court has applied the "functional approach" to immunity which looks to "the nature of the function performed," not the identity of the actor who performed it. Buckley, 509 U.S. at 269. The Supreme Court has held that such purposes are served by conferring absolute, as opposed to qualified immunity on prosecutors only when they are engaged in prosecutorial or advocative functions. Kalina v. Fletcher, 522

U. S. at 126-27; Buckley, 509 U. S. at 269-73; Burns, 500 U. S. at 494.  Acts undertaken

by the prosecutor in preparing for the initiation of judicial proceedings or for trial, and

which occur in the course of his role as advocate are entitled to absolute immunity.

Buckley, 509 U. S. at 273.  However, "[t]hose acts must include the professional

evaluation of the evidence assembled by the police and appropriate preparation for the

presentation at trial or before a grand jury after a decision to seek indictment has been

made." Id at 273.  As such, courts do not decide whether a *prosecutor* is entitled to

absolute immunity; they decide whether a *prosecutor performing a particular function* is

entitled to absolute immunity.  Juriss v. McGowan, 957 F.2d 345, 348 (7th Cir. 1992);

Auriemma, 860 F.2d at 277.  If the Court cannot determine whether the acts in question

are prosecutorial or administrative/investigative, a motion to dismiss on that basis should

be denied.  Hill v. City of New York, 45 F.3d 653, 663 (2nd Cir. 1995).

A prosecutor may not shield his investigative or administrative work with the

aegis of absolute immunity where a police officer performing the same function would

receive only qualified immunity.  Id at 276.  "If the police, under the guidance of the

prosecutors, had solicited the alleged fabricated testimony, of course, they would not be

entitled to anything more than qualified immunity." Id.  In Buckley, the prosecutors who

conspired with a witness to manufacture false evidence that the suspect's boot print

matched a boot print left by the murderer was not entitled to immunity for his actions.

Id. In Kalina v. Fletcher, 522 U.S. 118, the Supreme Court refused to grant absolute

immunity to a prosecutor who was functioning as a complaining witness and who made

false factual representations to the court to demonstrate probable cause.

Several federal courts have held that prosecutors are not entitled to absolute immunity when the conduct complained of does not serve a prosecutorial function. See *for example* Chavers v. Gurjnow, 786 F. Supp. 756, 758 (E.D. Wisc. 1992)(prosecutorial immunity not extended to state's attorney for cover-up of police misconduct); Patterson v. Burge, 328 F. Supp. 2d 878, 894 (N.D. Ill. 2004)( knowing suppression of evidence from judges and defense counsel while judicial proceedings are ongoing not immune); Houston v. Partee, 978 F. 2d 362, 368 at FN 4 (7th Cir. 1992)(damages action allowed to proceed against prosecutors for failing to correct their colleagues' mistake after conviction once they discovered evidence that the defendants may not have been guilty); Morley v. Walker, 175 F.3d 756 (9th cir. 1999)(prosecutor not immune when acting as witness for court); Whitaker v. Gacetti, 486 F.3d 572 (9th Cir. 2007)(prosecutor not immune for obtaining warrant through judicial deception); Schrob v. Catterson, 948 F.2d 1402 (3rd Cir. 1991)(prosecutor not immune in connection with negotiation of release of personal liability in connection with seizure proceedings); *see also* Smith v. Updergraff, 744 F.2d 1354 (8th Cir. 1984); Johnson v. Dorsey, 515 F.3d 778 (7th Cir. 2002).

\*　　　　　　\*　　　　　　\*

This case involves, *inter alia*, misconduct by a prosecutor Shearer in fabricating and using that evidence before Ken's trial as well as misconduct by the SAO Defendants in later attempting to pressure Ken into waiving his civil rights claims once the conduct of Shearer and police was exposed.

**1. Prosecutor Shearer Is Not Immune Because He Fabricated Evidence and Defrauded the Trial Court**

The Complaint alleges, and this Court must take as true, that prosecutor Shearer and the SAO Defendants engaged in the following conduct:

- The SAO Defendants obtained evidence regarding Ken's innocence and kept this information from Ken, his attorney and the Court;
- Shearer conspired with police and fabricated the existence of a complaining witness, Todd Johnson;
- Shearer arranged for Ken's public defender to interview a fictitious witness over the telephone.
- Shearer lied to Ken's public defender about the fact that the ficticious witness, Todd Johnson had no criminal background;
- Shearer, using the fictitious witness, fabricated evidence that the Car belonged to Todd Johnson;
- Shearer, using the fictitious witness, fabricated evidence that the car was in a working condition when it was stolen;.
- Shearer, using the fictitious witness, fabricated evidence that Todd Johnson did not consent to Ken's use of the car;
- Shearer used this fabricated evidence and his false statements to Ken's counsel to trick him into stipulating to the issue of ownership of the Car by Todd Johnson – something Shearer knew was false;
- Shearer then falsely represented to the Court that if Todd Johnson were called to testify he would testify that he was the owner of the Car, the car was in working condition and that he had not given Ken permission to drive the Car;
- Shearer used this fabricated evidence and these misrepresentations to deceive and commit a fraud upon the Court;

Schearer was acting in an administrative or investigative function when he set up the telephone call between Ken's public defender and the fictitious witness. This occurred outside of the presence of the Court and did not involve the advocacy of the State's position to the Court. These acts did not constitute actions usually taken by prosecutors as is required for prosecutorial immunity. Shearer clearly had a choice to refrain from taking such actions. This administrative function could have been performed by a clerk or a police officer. Certainly, a police officer would not be entitled to anything more than qualified immunity if she had set up a fake phone call to a fictitious witness. Moreover, the act of setting up the telephone call and fabricating the evidence of ownership, condition, consent and Todd Johnson's criminal background did

not involve any professional evaluation of evidence or advocacy. See <u>Milstein v. Cooley</u>, 257 F.3d 1004, 1011 (9th Cir. 2001)(prosecutor not immune for use of fabricated evidence); <u>Zahrey v. Coffey</u>, 221 F.3d 342, 348-49 (2nd Cir. 2000)(same). As the Supreme Court stated in <u>Kalina</u>, "Although the exercise of an advocate's professional judgment informed petitioner's other action, that judgment could not affect the truth or falsity of the factual statements contained in the certification." <u>Kalina</u>, 522 U.S. at 119. Further, fabricating evidence is not appropriate preparation for trial. *See* <u>Buckley</u>, 509 U. S. at 269.

Moreover, the Supreme Court in Kalina held that "[t]estifying about facts is the function of a witness, not a lawyer" and the evidentiary component of an application for probable case was the function of a witness. <u>Id</u>. *See also* <u>Whitaker</u>, 486 F.3d 572 (9th Cir. 2007)(immunity denied in connection with warrant obtained through judicial deception); <u>Morley v. Walker</u>, 175 F.3d 756 (immunity denied when prosecutor acted as witness by attesting to facts in affidavit). <u>Kalina</u> is analogous to this case. Specifically Shearer was functioning as a witness when he falsely testified before the trial court that Todd Johnson would testify to ownership, condition and lack of consent (when he knew that each of these facts were false). In fact, during the entire process of fabricating the witness and evidence, Shearer was acting as a *de facto* complaining witness. Thus, Shearer was not functioning as a prosecutor when he performed these acts and is not entitled to absolute immunity. *See also* <u>Milstein</u>, 257 F.3d at 1011 (knowingly obtaining false statements by prosecutor for the purpose of prosecution not entitled to immunity).

**2.    The SAO Defendant's Conduct Of Prolonging Ken's PCR Proceedings And Conditioning Ken's Release On A Waiver Of His Civil Rights Claims Was Not A Prosecutorial Function.**

Moreover, the SAO Defendants are not entitled to immunity with respect to their actions during the pendency of Ken's PCR proceedings.  Taking the allegations of the Complaint as true, as this Court must, the SAO Defendants engaged in the following conduct:

- The SAO Defendant, upon learning of Ken's innocence through their investigation failed and refused to take actions to dismiss the charges against Ken and affect his release;
- Instead, the SAO Defendants attempted to cover-up their malfeasance and avoid potential liability and embarrassment by conditioning any agreement to release Ken on the waiver of his civil rights claims against them;
- Further, the SAO Defendants delayed Ken's PCR proceedings for three years and left him incarcerated to exert pressure on Ken to waive his civil rights claims.

Most, if not all of these actions took place outside of Court.  Moreover, none of the actions involved a professional evaluation of evidence in order to advocate for a good faith conviction before the Court. The SAO Defendants' conduct had nothing to do with appropriate preparation for the hearing on the merits of Ken's Post Conviction Petition.

Simply put, once the truth was exposed the prosecutors were trying to save their brother prosecutor, Mr. Shearer and themselves.  Rather than "seeking justice" as is required by their office and release Ken they abused their power by prolonging Ken's incarceration in order to obtain a waiver of his claims.  There is nothing prosecutorial about this misconduct.  This is analogous to a police officer that has used excessive force

offering to free an arrestee if he waived his civil rights claims. This is not like a plea bargain, as is argued by the Defendants. A plea bargain involves an agreement to accept punishment for admitting a crime. It does not involve the personal liability of prosecutors or their office. In fact, such conduct is ethically prohibited.[3] As such, the conduct the prosecutors engaged in was not required by their office, as demonstrated by the rules of ethics. This was a function of their own choice, in violation of their office and the rules of ethics.

The SAO Defendants miss the point when they argue that Ken was not injured as a result of their "settlement proposal" because he did not accept the deal. It is outrageous to even argue that purposefully prolonging the incarceration of an innocent man to exert pressure on him does not result in injury. In addition to the time he served in prison Ken served a year and a half of parole for this crime after his release. Moreover, Ken was stigmatized as a convicted felon during the period following his incarceration until his conviction was overturned. The fact of the matter remains that the only thing that prevented Ken from freedom was his refusal to waive the very claims he is now litigating against the SAO Defendants.

By the course of conduct described above, the SAO Defendants ceased acting in any prosecutorial function whatsoever, and instead acted as *de* facto defense attorneys attempting to cover-up their malfeasance and limit their own liability. These actions had no connection to their role as advocates for the State. *See for example* <u>Schrob</u>, 948 F.2d

---

[3] See, Illinois Rule of Professional Conduct 3.8 – Special Responsibilities of a Prosecutor – "(a) The duty of a public prosecutor…is to seek justice, not merely to convict; (b) A public prosecutor…shall not institute or cause to be instituted criminal charges when such prosecutor or lawyer knows or reasonably should know that the charges are not supported by probable cause; (c) A public prosecutor…shall make timely disclosure to counsel for the defendant…the existence of evidence, known to the prosecutor…that tends to negate theguilt of the accused."

1402 (3rd Cir. 1991)(prosecutor not immune in connection with negotiation of release of personal liability in connection with seizure proceedings); <u>Henzel v. Gerstein</u>, 608 F.2d 654, 657 at FN 4 (5th Cir. 1979)("One alleged violation, if supported, would not be within the scope of prosecutorial immunity.  Henzel alleges that Shevin directed an unnamed Assistant Attorney General to persuade him to sign an affidavit agreeing not to sue state officials in return for parole);[4] *see also* <u>Houston</u>, 978 F.2d at 367-68 (prosecutors who discovered evidence after conviction no entitled to absolute immunity).

T SAO Defendants were not acting to further a prosecutorial function, but rather, to protect and cover-up their own interests.  As such, absolute immunity should not be available to them.

**B.**     **<u>GRANTING THE SAO DEFENDANTS IMMUNITY IN THIS CASE WILL NOT FURTHER THE PUBLIC POLICY JUSTIFICATIONS FOR THE RULE.</u>**

The public policy considerations that justified the common law decisions affording absolute immunity would not be served by finding it in this case.  Those considerations include the interest in protecting prosecutors from harassing litigation, the interest in enabling prosecutors to exercise judgment when deciding which suits to bring and conducting them in court, and the continuing functioning of our criminal justice system.  <u>Kalina</u>, 522 U. S. at 125; <u>Houston</u>, 978 F.2d at 368.   Instead, awarding the SAO Defendants immunity in this case would sanction the outrageous conduct described above.  As the <u>Houston</u> court succinctly stated: [M]aking prosecutors answer for their post-prosecution acts that were not related to the prosecution will not hamper them in initiating a prosecution or in presenting the State's case.  <u>Id</u>.  Moreover, this Court need

---

[4] <u>Henzel</u> was decided on summary judgment.  In <u>Henzel</u> the Court held that there was no evidence to support this allegation or refute the affidavit offered to contradict it.

not be concerned that denying the SAO Defendants absolute immunity under the circumstances will have a chilling effect on prosecutors.  Instead, such a holding would enforce what the SAO Defendants should already be well aware of – courts will not sanction the fabrication of evidence to obtain the conviction of a defendant they know is innocent.  The SAO Defendants are the only persons to blame for any disruption in the criminal justice system this case has caused.  When faced with irrefutable evidence of Ken's actual innocence they could have and should have simply chose to voluntarily dismiss the indictment and affect Ken's release. They did not.  Instead, they burdened the court system with three years of PCR proceedings.  Instead, they allowed Ken to sit in jail for over two more years.  Instead, they attempted to limit their own liability by tricking Ken into waiving his civil rights.

Finally, this Court should note that there are no safeguards to prevent the abuses of power alleged in this cause.  If this Court grants the SAO Defendants immunity from suit, he is left with no remedy.  As the Houston Court pointed out:

> Generally, the judicial process itself is a sufficient check to prevent prosecutorial abuses from going unredressed.  The judicial process is self-correcting.  Procedural rules and the ability to confront the prosecutor at trial, appeals and the possibility of collateral relief obviate the need for damages actions to control unconstitutional conduct and prevent unjust results.
>
> *            *            *
>
> [N]evertheless, Houston and Brown spent four years in prison for a crime they did not commit.  Without this damage action, they will probably never have an opportunity to be compensated for those lost years.  Houston, 978 F.2d at 368 (internal citations omitted)

Here, as was the case in Houston, the SAO Defendants should be held liable for damages for every day that Ken spent in prison after the SAO Defendants knew that he

was actually innocent.  If this Court grants the SAO Defendants absolute immunity these wrongs will not be remedied.  Allowing Ken's claims to proceed will not frustrate the legal system.  Instead, it will only confirm what our laws and ethical regulations already proscribe - a prohibition against the knowing conviction of an innocent person through prosecutorial misconduct.

**B.**      **KEN'S STATE LAW CLAIMS ARE NOT BARRED BY ILLINOIS PUBLIC OFFICIAL IMMUNITY.**

The SAO Defendants contention that Ken's state law claims are barred by Illinois public official immunity is also unfounded.  Illinois public official immunity is in some ways analogous to federal absolute immunity, but the two are not co-extensive. Under Illinois law public immunity is inapplicable if the state official acted with "malicious motives." Aboufariss, 804 N.E.2d at 812 (*citing* Hanzel Construction, Inc. v. Wehde and Southwick, Inc., 474 N.E.2d 38, 42 (1985)); *see also* Hortstman v. County of DuPage, 284 F. Supp. 2d 1125, 1133 (N.D. Ill. 2003)(finding it inappropriate to grant a prosecutor immunity from state law claims without a record of evidence indicating a lack of malice). Where an official deliberately commits a wrongful act or acts maliciously, he is not entitled to public official immunity.  Moffatt, 110 Ill. Dec. 787, Hicks, 60 Ill. Dec. 379; Aboufariss, 305 Ill. App. 3d at 1064-65.  Even a dismissal of federal claims pursuant to absolute immunity under Imbler does not require a dismissal of state law claims on the basis of immunity.  *See* Cook v. Weber, 698 F.2d 907, 910 (7th Cir. 1983).  The burden to prove that immunity exists is on the party seeking the immunity.  Burns, 500 U. S. at 486.

As discussed above, Ken alleges that the SAO Defendants engaged in a course of conduct that violated his civil rights in violation of the Illinois and U.S. Constitutions as well as the Illinois Rules of Professional Conduct. Moreover, their actions were not taken as prosecutors furthering state interests, but rather, were part of a cover-up of malfeasance regarding perjured testimony, false complaints and reports, fabricated evidence and fraud committed on the court. Ken also alleges that the SAO Defendants violated these constitutional and ethical duties by attempting to pressure Ken into waiving his civil rights in exchange for an early release. Ken's Complaint also specifically alleges that the SAO Defendants acted with malice. *See* Complaint, ¶¶ 113, 135, 141, 151 and 153. Moreover, Ken specifically alleges that the actions of the SAO Defendants were "willful, wanton and malicious." Complaint, ¶¶ 120, 190. In addition to the conduct described above Ken alleges that the SAO Defendants knew that evidence exonerated Ken, but failed to disclose this evidence and continued to prosecute him. Finally, the SAO Defendants knew that a gross injustice had occurred in connection with Ken's conviction. Nonetheless, they purposefully prolonged Ken's PCR proceedings in an effort to defend themselves and obtain a waiver of Ken's civil rights claims against them. These allegations, as well as the reasonable inferences that can be drawn from them suffice to allege malice sufficient to avoid the defense of state law public official immunity.

The Defendants contend that they are entitled to immunity under White v. City of Chicago, 861 N.E.2d at 1088-90 (1st Dist. 2006). The problem with this argument is that White was a case in which neither malice nor the lack-of-malice requirement was at issue. Nowhere in White did the Illinois Court of Appeals even suggest that the Plaintiff

had alleged that the Defendants acted with "malicious motives." The <u>White</u> Court primarily focused its analysis on the difference between "investigative" and "prosecutorial" acts. The <u>White</u> Court's analysis is consistent with <u>Aboufariss</u>. <u>White</u> cited <u>Aboufariss</u> favorably and did not suggest that it was questioning the "malicious motives" element of public official immunity. *See* <u>White</u>, 861 N.E.2d at 1092. As such, the "malicious motives" exception to Illinois public official immunity remains undisturbed.

Here, the malicious motives exception applies to Ken's state law claims. Ken also incorporates by reference his public policy arguments outlined in § IB above. Based on the allegations of Ken's Complaint, the SAO Defendants are not entitled to public official immunity.

## II. **THIS COURT HAS SUBJECT MATTER JURISICTION OVER KEN'S CLAIMS.**

### A. **THE ELEVENTH AMENDMENT DOES NOT BAR KEN'S CLAIMS AGAINST THE SAO DEFENDANTS.**

The SAO Defendants contend that the Eleventh Amendment bars Ken's state law claims against the SAO Defendants. This argument is misplaced because Ken has brought his claims against the SAO Defendants in their individual capacities. The Eleventh amendment prohibits federal courts from deciding suits brought by private litigants against states and/or state officials acting in their official capacity. <u>Garcia v. City of Chicago</u>, 24 F.3d 966, 968 (7th Cir. 1994). It is well-settled law that the Eleventh Amendment does not, however bar suits against state officials in their <u>individual</u> capacity. <u>Hafer v. Melo</u>, 502 U.S. 21, 30-31 (1992). Moreover, acts of malice and violations of the Illinois and U.S. Constitutions, if proven, would constitute

conduct outside of the scope of the SAO Defendant's authority. Allegations of malice need not be brought in the Court of Claims. Orange v. Burge, 2005 WL 742641 at * 18. (finding that federal court is the appropriate venue for malice claims against SA's acting in their individual capacity);

Clearly, in the case at bar, sovereign immunity does not apply. *See also* Senn Park Nursing Center v. Miller, 104 Ill. 2d 169, 188 (1984); Welch v. Illinois Supreme Court, 322 Ill. App. 3d 345, 353 (3rd Dist. 2001)(malice claims need not be brought in Court of Claims); Nelson v. Murphy, 44 F.3d 497, 504-505 (7th Cir. 1995); Scott v. O'Grady, 975 F.2d 366, 369 (7th Cir. 1992); Orange, 2005 WL 742641.

Ken has brought his claims against the SAO Defendants in their individual capacities. Complaint, ¶¶ 15, 16. Ken has alleged that the Defendants are employees of Cook County. Further, Ken has not pled any claims in his Complaint against the State of Illinois. Nor has he contended that the State of Illinois is liable to defend and/or indemnify the SAO Defendants for his claims. In fact, to the contrary, Ken's Complaint alleges that Cook County is liable for the acts of the SAO Defendants. *See* C., Count XIV *generally*. The SAO Defendants do not even contend that the State of Illinois is a necessary defendant to this action and/or that the State of Illinois will be required to indemnify the SAO Defendants.[5] As such, neither the State of Illinois, nor any Eleventh Amendment issues are implicated by Ken's state law claims and this Court is the proper venue for Ken's state law claims against the SAO Defendants.

---

[5] Were that the case, and should this Court determine that the State of Illinois is a necessary party to this action, Ken could amend his Complaint to add the State of Illinois as a party Defendant. At this point in the litigation none of the parties have contended that such an amendment would be necessary.

Moreover, a judgment in favor of Ken would not operate to control the actions of the State or subject it to liability. *See* Jinkins v. Lee, 209 Ill. 2d 320 (2004). Ken seeks only money damages from the SAO Defendants, and though he seeks to recover from the City of Chicago for the actions of the Defendant Officers, he does not seek to recover from the State of Illinois for the actions of the SAO Defendants. Thus, the state law claims against the SAO Defendants "can in no way be said to 'control' any action of the State and the State is not the 'real party in interest'." Madden v. Kuehn, 56 Ill. App. 3d 997, 1001 (2nd Dist. 1978).

In sum, it is settled law that suits against state officials are not barred by the Eleventh Amendment when the state actors are sued in their individual capacities. Ken has alleged that the SAO Defendants were acting in their individual capacities. Moreover, Ken has alleged that the SAO Defendants acted maliciously and intentionally in violation of both Illinois state law and the U.S. Constitution. Neither the issues raised nor the relief sought in this case implicates the sovereign immunity of the State of Illinois. Jinkins, 209 Ill. 2d 320. As such, the state law claims against the SAO Defendants may proceed in this Court.

**B.    THIS COURT HAS SUPPLEMENTAL JURISDICTION OVER KEN'S CLAIMS AGAINST THE SAO DEFENDANTS.**

The SAO Defendants also contend that the Illinois Court of Claims has exclusive jurisdiction over the subject matter of this lawsuit, as it is essentially a suit against the State of Illinois. As a matter of law, the SAO Defendants are incorrect. As discussed above at Section IIA, this is not an action against the State of Illinois. As such, the Illinois Court of Claims is not conferred with exclusive jurisdiction over this case. A

federal court has supplemental jurisdiction over state law claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy.  28 U.S.C. § 1367(a).  Even if this Court were to hold that the individual SAO Defendants are state actors, it is well-settled that a state law, even one purporting to establish exclusive jurisdiction in a particular state court, cannot have the effect of contracting the subject matter jurisdiction of a federal court as established by Congress. *See, e.g.,* Goetzke v. Ferro Corp.*,* 280 F.3d 766, 779 (7th Cir. 2002); Truck Components, Inc. v. Beatrice Co.*,* 143 F.3d 1057, 1061 (7th Cir.1998).  The state statute upon which the SAO Defendants and the County rely has no effect on this Court's ability to entertain the state law claims against the SAO Defendants and Cook County.  The state-law claims set out in Ken's complaint are firmly within the scope of the supplementary jurisdiction conferred upon this court by 28 U.S.C. § 1367(a).  This Court has subject matter jurisdiction over Ken's federal claims.  As such, it also has jurisdiction over Ken's related state law claims.

It is also settled law in Illinois that when a state employee acts unconstitutionally, or without authority, a suit may be maintained against the employee in his individual capacity and does not constitute an action against the State of Illinois.  Wozniak v. Conry, 288 Ill. App. 3d 129, 134 (4th Dist. 1997); Village of Riverwoods v. BG Ltd. Partnership, 276 Ill. App. 3d 720, 725 (1st Dist. 1995).  Ken has alleged that the SAO Defendants fabricated evidence, violated Ken's constitutional rights and participated in a cover-up of theirs and the Chicago Police Department's misconduct.  These acts are obviously illegal, unconstitutional acts that are beyond the lawful scope of the SAO Defendants' authority.  As such, under settled law, these claims do not fall within the

exclusive jurisdiction of the Court of Claims.  *See also* <u>Loman v. Freeman</u>, 229 Ill. 2d

104 (2008)(Court of Claims does not have exclusive jurisdiction over a claim that a

state-employed veterinarian has breached duty of care applicable to veterinarians).

### III.    KEN HAS SUFFICIENTLY PLED CLAIMS AGAINST ATTORNEY DEVINE IN HIS INDIVIDUAL CAPACTIY

In Defendants' Motion to Dismiss, Defendants claim that Plaintiff's claims

against State's Attorney Richard Devine must fail because Plaintiff did not allege any

personal involvement on behalf of Devine.  Defendants' contention is without merit.

Ken has not had the benefit of discovery to learn the full extent of Devine's

involvement.   Nonetheless, the facts pled in the Complaint provide that the SAO

Defendants, including Devine engaged in serious misconduct in connection with Ken's

criminal trial and PCR proceedings.  Devine's personal involvement in this regard is pled

throughout Ken's Complaint.  Devine's name appears on all of the filings in the criminal

and PCR proceedings.  Ken has also alleged that the SAO Defendants attempted to obtain

a waiver of Ken's civil rights claims against the SAO Defendants.   A reasonable

inference can be drawn from the allegations regarding this "proposed settlement."

Namely, that Devine orchestrated and/or authorized the proposed settlement with Ken.

Moreover one can reasonably infer that Devine acted with reckless disregard and/or

willful indifference to Ken's civil rights in allowing for Ken's continued incarceration

and conditioning any proposed settlement on Ken's waiver of those claims.   At a

minimum, Devine, as the principal of the SAO Defendants had the ultimate authority to

oversee and approve any such agreement.  Clearly SA Ertler did not have the authority to

unilaterally attempt to negotiate away the civil rights claims of criminal defendants in

Ken's circumstances or offer them a release from prison.

Ken has alleged further personal involvement in the cover-up and settlement offer by Devine. Devine had direct supervisory authority over his employees. Devine was personally involved in supervising Defendant's Shearer, Ertler, Doss and Stack. Devine's name is on the letterhead for the State's Attorney's Office and he appears in the signature block of the pleadings in the criminal and PCR proceedings. Further, he is responsible for the *de facto* policies that govern the action of his office as well as his employees. He is responsible for his prosecutors' violations of the Rules of Professional Conduct if he orders, knows of his attorney's misconduct and ratifies it, or knows of his employee's misconduct and fails to avoid, mitigate, or make reasonable remedial action. Ill. R. Pro. Conduct, Rule 5.1 (a). Taking the well-pled facts of the Complaint as true, these allegations state a claim against Devine.

The SAO Defendants contend that even if Ken did sufficiently allege claims against Devine individually he is absolutely immune from prosecution. This is simply not true. *See* § I, *supra*. Moreover, under Illinois Supreme Court Rules of Professional Conduct, each lawyer having direct supervisory authority over another lawyer shall make reasonable efforts to ensure that the other lawyer's conduct conforms to these Rules. Further, immunity does not rest on an individual's status as a prosecutor, but "is grounded in the nature of the functions he was performing in the case." Houston, 978 F.2d at 366. For example, a prosecutor who is not directly involved in the prosecution of a case still may be guilty of a Brady violation based on his suppression of exculpatory evidence during post-conviction proceedings. Patterson, 328 F. Supp. 2d at 894. (finding that state's attorneys could not claim absolute immunity for Devine's knowing suppression of

this evidence from judges, and defense counsel while Patterson's judicial proceedings were ongoing).

For eight years, under Richard Devine's direction, the office he controls has been responsible for prosecuting Ken for a crime he did not commit, fabricating evidence, suborning perjury, and concealing and withholding evidence of Ken's innocence to cover-up its unlawful activities. At this stage of the litigation, taking the well-pled allegations of Ken's Complaint as true, Ken has sufficiently pled adequate involvement by Devine individually for his claims to proceed.

IV.    **KEN HAS SUFFICIENTLY PLED CLAIMS AGAINST THE SAO DEFENDANTS FOR FAILURE TO INTERVENE**

The SAO Defendants contend, without any supporting authority, that Ken cannot state claims against them for failure to intervene in connection with Ken's civil rights violations. The SAO Defendants do not cite to a single case that stands for the proposition that such a claim does not exist. Nor do the SAO Defendants refute the well-pled facts of Ken's Complaint. Those allegations, as well as the inferences that can be drawn therefrom, indicate that the SAO Defendants knew that Ken was innocent of the charges he was being accused, and later convicted of. At several instances throughout the five-year period in which Ken was tried, convicted and attacking his conviction the SAO Defendants sat idly by while their associates willfully continued to violate Ken's civil rights. *See*¸ Count VI generally. Ken has alleged that the SAO Defendants had a reasonable opportunity to prevent the harm inflicted on Ken, but failed to do so. As attorneys and officers of the court there is no excuse for the fact that they didn't. Further, the SAO Defendants understood the dire consequences of their failure to prevent additional harm, which is the reason they attempted to prolong the PCR

proceedings and induce Ken into waiving his civil rights claims against them. As such, Ken has alleged that this conduct represents a discrete violation of Ken's civil rights. Absent authority to the contrary, this Count should stand.

## V.    COOK COUNTY IS A PROPER DEFENDANT TO THIS ACTION

The SAO Defendants advance several arguments in support of the proposition that they are not employees of Cook County and, as such, Cook County is not a proper defendant to this action. In this regard the SAO Defendants also argue that Cook County cannot be held liable under a theory of *respondeat superior*, indemnification or the Monell claim.

Under the theory of *respondeat superior*, a plaintiff must show that a principal/agency relationship exists and that the agent committed a tort while acting in the scope of his employment. Clayborne v. DuPage County, 2005 WL 442290 at * 3, *citing* Restatement (Second). of Agency § 219(1)(1958). In order for a Plaintiff to invoke the theory it is sufficient that the wrongdoer be the employee, agent or the servant of the entity. Agency is the fiduciary relation that results from the manifestation of consent by one person to another that the other shall act on his behalf and subject to his control, and consent by the other so to act. Id. *citing* Restatement (Second) of Agency, § 1. Here, clearly the County is the principal of the SAO Defendants. The office itself is called the Office of the Cook County State's Attorney. The State's Attorney's Office is a part of Cook County. It is subject to the control of the County. The County pays the SA's payroll, and the SAO Defendants office in the County building. As such, they operate on the expenses of the County. Clearly a principal/agency relationship exists that subjects

the County to liability under the theory with respect to the individual SAO Defendants under the theory of *respondeat superior*.

The State's Attorney's Office is a County agency or office. <u>Clayborne</u>, 2005 WL 442290 (N.D. Ill. 2005)(finding county public defender's office a county agency or office). The County pays the ASA's and the State's Attorney out of its county budget. 55 ILCS 5/4-3001, 5/4-3002. The County finances, indemnifies and monitors the Office. As such, the County is intertwined with the agency. The very letterhead used by the agency indicates that the County and State's Attorney's Office are connected. As such, the State's Attorney's Office is an employer of the SAO Defendants. At the very least, this Court should find that the SAO Defendants are agents of Cook County.

Cook County is also a necessary party to this action on the basis that is it statutorily responsible to indemnify the Assistant State's Attorneys as well as Defendant Devine. *See* <u>Robinson v. Sappington</u>, 351 F.3d 317, 339 (7th Cir.2003); <u>Pucinski v. Cook County</u>, 192 Ill. 2d 540 (2000) <u>Patterson</u>, 328 F. Supp. 2d at 903 (denying motion to dismiss plaintiff's indemnification claim against the County); <u>Cortez v. Close</u>, 101 F. Supp. 2d 1013, 1016 (N.D. Ill. 2000). As such, Cook County is a necessary party to this action.

<u>**CONCLUSION**</u>

If this Court grants the SAO Defendant's motion to dismiss a grave injustice will be sanctioned. The SAO Defendants knew Ken was innocent of the charges, but nonetheless indicted, tried and convicted Ken of stealing Arthur Johnson's Car. They did this through fabricating false evidence, perjured testimony and using false reports and complaints. At numerous points in these proceedings the SAO Defendants had the

opportunity to correct this wrong and prevent and/or shorten Ken's incarceration.  The

SAO Defendants failed and refused to do this – in part based on Ken's refusal to waive

his rights with respect to the very lawsuit that has been brought against them.  As a result,

Ken spent 4 ½ years in prison and many months on parole.  Ken is mindful of the policy

justifications for absolute prosecutorial immunity.  Nonetheless, Ken urges this Court to

deny the relief requested by the SAO Defendants.  They should know that fabricating

evidence, suborning perjury and attempting to trick innocent defendants to waive their

civil rights are not actions that will be protected by immunity.  For the reason, and for the

reasons set forth more fully above, Ken respectfully requests that their motion to dismiss

be denied.


/s/ Scott W. Kummer
One of Plaintiff's Attorneys

SCOTT W. KUMMER
JULIET E. BOYD
BOYD & KUMMER, LLC
20 S. Clark Street, Suite 500
Chicago, IL 60603
312-363-6100
312-372-7076 (FAX)
ARDC No. 6255657
ARDC No. 6273348