**FILED**

**AUGUST 25, 2008**
MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS,
## EASTERN DIVISION

| | | |
|---|---|---|
| Kenneth Gordon, | ) | |
| | ) | |
| Plaintiff, | ) | No.    08 C 377 |
| | ) | |
| v. | ) | Judge Marvin Aspen |
| | ) | |
| Richard Devine, Cook County | ) | Magistrate Judge Denlow |
| State's Attorney, et al., | ) | |
| | ) | |
| Defendants. | ) | |

### DEFENDANTS RICHARD A. DEVINE, MERLE SHEARER, MARK ERTLER, RIVANDA DOSS, ANDREW DALKIN, CELESTE STACK, AND COOK COUNTY'S REPLY IN SUPPORT OF THEIR MOTION TO DISMISS PLAINTIFF'S COMPLAINT

Defendants Richard A. Devine, Cook County State's Attorney, Assistant State's Attorney Merle Shearer, Assistant State's Attorney Mark Ertler, Assistant State's Attorney Rivanda Doss, Assistant State's Attorney Andrew Dalkin, Assistant State's Attorney Celeste Stack, and Cook County, by and through their attorneys, Patrick T. Driscoll, Jr., Deputy State's Attorney, and Louis Hegeman and Stephen L. Garcia, Assistant State's Attorneys, submit the following Reply in support of their Motion to Dismiss Plaintiff's Complaint pursuant to FRCP 12(b)(1) and 12(b)(6).

### INTRODUCTION

In this lawsuit, Plaintiff, Kenneth Gordon ("Plaintiff"), brings various claims arising out of his arrest and prosecution for possession of a stolen motor vehicle, on the purported basis that he was wrongfully prosecuted. Defendants Richard A. Devine ("SA Devine") and Assistant State's Attorneys Merle Shearer ("ASA Shearer"), Mark Erlter ("ASA Ertler"), Rivanda Doss ("ASA Doss"), Andrew Dalkin ("ASA Dalkin"), Celeste Stack ("ASA Stack"), and Cook County (collectively the "SAO Defendants") have moved to dismiss Plaintiff's claims against them in their entirety for multiple reasons, including that Plaintiff's claims are barred by absolute prosecutorial immunity because all of the conduct alleged of the state's attorney defendants occurred in the course of their role as prosecutors either, in the case of ASA Shearer, at

Plaintiff's criminal trial, or in the case of ASAs Ertler, Doss, Dalkin, and Stack, as prosecutors assigned to defend against the post-conviction petition filed by Plaintiff after his conviction.

Putting aside the SAO Defendants' entitlement to immunity from Plaintiff's claim for damages against them, Plaintiff also fails to allege any personal involvement of SA Devine, other than that the assistant state's attorneys involved in Plaintiff's criminal trial were acting in Devine's behalf. The SAO Defendants further submit that this Court lacks subject matter jurisdiction over Plaintiff's state law claims against the SAO Defendants, pursuant to the doctrine of sovereign immunity and the Illinois Court of Claims Act, which makes the Illinois Court of Claims the exclusive forum for damage suits against state officials. Plaintiff also fails to state a claim against the SAO Defendants for failure to intervene; and fails to state a claim against Cook County based on the alleged conduct of SA Devine and ASAs Shearer, Ertler, Doss, Dalkin, and Stack, in that State's Attorneys and Assistant State's Attorneys are not Cook County employees and Cook County may not be held liable for any of their alleged conduct, or the customs and practices of the State's Attorney's Office.

In his Response,[1] Plaintiff's argument for why the prosecutors in his criminal case are not entitled to immunity boils down to the proposition that the "SAO Defendants, after obtaining irrefutable evidence that [Plaintiff] was innocent, continued to prosecute him for a crime they knew he did not and could not have committed' and "[i]n doing so, the SAO Defendants intentionally caused an innocent man to be convicted of a crime he did not commit." (Response, pp. 1-2.) Plaintiff's theory is that, because the SAO Defendants purportedly knew Plaintiff was innocent, they were not acting as prosecutors in continuing to prosecute him, but as "*de facto* defense attorneys-defending themselves from embarrassment and potential liability." (See Response, p. 11.)

Plaintiff largely misconstrues the nature of absolute immunity, which is immunity from a suit for damages, rather than merely a defense to liability, and his "*de facto* defense attorney" theory finds no support in §1983 jurisprudence. Acknowledging that absolute immunity may on occasion lead to harsh results, the court in *Imbler v. Pachtman*, 424 U.S. 409, 427-28 (1976) observed that, although the rule of absolute immunity leaves "the genuinely wronged defendant without civil redress against a prosecutor whose malicious or dishonest action deprives him of

---

[1] Plainitff's Response to Defendants Richard Devine, Merle Shearer, Mark Ertler, Rivanda Doss, Andrew Dalkin, Celeste Stack and Cook County's Motion to Dismiss Plaintiff's Amended Complaint, referenced herein as "Response, p. _."

liberty," providing a prosecutor with lesser, qualified immunity "would prevent the vigorous and fearless performance of the prosecutor's duty that is essential to the proper functioning of the criminal justice system." *Id* at 427-28. Although Plaintiff attempts to focus on the perceived harsh result of the application of absolute prosecutorial immunity in this matter, such is the result nevertheless. Plaintiff's state of mind argument and his attempt to characterize the SAO Defendants' conduct as other than prosecutorial simply fail as a matter of law.

<u>**ARGUMENT**</u>

**I.      The SAO Defendants Are Entitled To Absolute Prosecutorial Immunity From Plaintiff's Claims.**

**A.      Plaintiff's §1983 claims are barred by absolute prosecutorial immunity.**
(Reply to Response, pp. 11-21)

Plaintiff attempts to take advantage of liberal notice pleading standards and creative characterization of the alleged conduct of the SAO Defendants in connection with his underlying criminal prosecution in the attempt to avoid the dismissal of his claims against them on the basis of absolute prosecutorial immunity. Even under federal rules, a "plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic v. Twombly*, 127 S. Ct. 1955, 1964-65 (2007). A plaintiff may not "circumvent a defendant's absolute immunity defense simply by making bald assertions that a prosecutor committed various wrongs while acting as an investigator or administrator. To allow such an allegation to defeat the prosecutor's immunity without presenting supporting allegations would emasculate the Supreme Court's holding in *Imbler*." *Stokes v. City of Chicago*, 660 F. Supp. 1459, 1461-62 (N.D. Ill. May 22, 1987)(Bua, J.).

It is absolutely clear from the allegations of Plaintiff's fact specific Complaint that the alleged conduct of ASA Shearer took place in the course of his actions as the trial attorney at Plaintiff's criminal trial and that any actions of ASAs Ertler, Doss, Dalkin, and Stack were in the course of their assignment in defending against the post-conviction petition Plaintiff filed after his conviction. "[I]f a plaintiff alleges facts within a complaint that defeat an essential element of a claim, the complaint can be dismissed under Rule 12(b)(6)." *Wilson v. O'Brien*, 2007 U.S. Dist. LEXIS 91555, *6 (N.D. Ill. December 13, 2007)(Kocoras, J.)(dismissing complaint under Rule 12(b)(6) on the basis of absolute prosecutorial immunity); *see also Hampton v. City of*

*Chicago*, 349 F. Supp. 2d 1075, 1081 (N.D. Ill. 2004)(Moran, J.)(dismissing claims against assistant state's attorney pursuant to FRCP 12(b)(6) on the basis of absolute immunity because the acts complained of were functions performed by prosecutors, notwithstanding plaintiff's characterization of the conduct as "investigative" rather than "prosecutorial").

Furthermore, Plaintiff's attempt to avoid immunity by a state-of-mind argument simply does not carry the day. As the Seventh Circuit has emphasized, "Prosecutors are entitled to absolute immunity for actions as advocates before the grand jury and at trial even if they present unreliable or wholly fictitious proofs. 113 S. Ct. at 2612 n. 3." *Buckley v. Fitzsimmons*, 20 F.3d 789, 795 (7th Cir. 1994), citing *Burns v. Reed*, 500 U.S. 478, 111 S. Ct. 1934, 1941 & n. 6, 114 L. Ed. 2d 547 (1991). "Moreover, absolute immunity shields prosecutors even if they act 'maliciously, unreasonably, without probable cause, or even on the basis of false testimony or evidence.'" *Smith v. Power*, 346 F.3d 740, 742 (7th Cir. 2003), citing *Henry v. Farmer City State Bank*, 808 F.2d 1228, 1238 7th Cir. 1986).

Plaintiff's further attempt to avoid absolute immunity by characterizing the SAO Defendants "*de facto* defense attorneys" does not change that fact that they were acting in their roles as prosecutors and does not negate the application of absolute immunity to the claims against them. As Plaintiff acknowledges, the Supreme Court has applied a functional approach to absolute immunity. (See Response, pp. 12-13.) Notwithstanding this, Plaintiff cites to various authority for the proposition that "prosecutors are not entitled to absolute immunity when the conduct complained of does not serve a prosecutorial function." (Response, p. 14.) These cases are all inapposite.

Plaintiff first cites a case fom the Eastern District of Wisconsin, *Chavers v. Stuhmer*, 786 F. Supp. 756 (E.D. Wis. February 28, 1992)(Gordon, J.), for the principle that prosecutorial immunity does not extend to a state's attorney for the cover-up of police misconduct. (Response, p. 14.) The holding in *Chavers* has been questioned in this District. In *Bernal v. Shifflet*, 1995 U.S. Dist. LEXIS 9919 (N.D. Ill. July 13, 1995)(Marovich, J.), it was alleged that several sheriff defendants conspired to get plaintiff for the murder of his wife. Plaintiff alleged he was indicted, arrested, charged with murder and forced to remain in jail for eleven months until the charges against him were dropped prior to trial due to lack of evidence. The state's attorney defendant was alleged to have acted to cover up the sheriffs' actions and refused to tender information

4

supporting plaintiff's innocence. The plaintiff in *Bernal* attempted to characterize the state's attorney's conduct as investigative, in reliance on *Chavers*.

Dismissing the complaint in *Bernal*, Judge Marovich rejected the comparison to *Chavers*, observing that it was important to note that *Chavers* was decided in the context of a petition for leave to file *in forma pauperis* by a *pro se* inmate, "a context that invokes an extraordinarily liberal standard" that did not apply to the claims before the court in *Bernal*. 1995 U.S. Dist. LEXIS 9919 at *9. Judge Marovich also held that the allegations against the state's attorney were "typical of those that previous courts have held involved functions warranting absolute immunity." *Id.* at *10. *Cf. Hartman v. Moore*, 547 U.S. 250, 261-62 (2006)(holding that a prosecutor is entitled to immunity from a claim of retaliatory prosecution, where it is alleged that several postal inspectors and a prosecutor engineered the prosecution of plaintiff in retaliation for his criticism of the postal service. See also *Elder v. Athens-Clark County*, 54 F.3d 694 (11th Cir. 1995), cited by the SAO defendants, holding that a prosecutor was immune from suit under §1983, where the prosecutor allegedly conspired to maliciously prosecute plaintiff for obstruction of justice in an effort to cover up plaintiff's complaints of beating by jailers.

Plaintiff next cites *Patterson v. Burge*, 328 F. Supp. 2d 878 (N.D. Ill. August 9, 2004)(Gottschall, J.), and *Houston v. Partee*, 978 F.2d 362 (7th Cir. 1992). (Response, p. 14.) In so doing, Plaintiff misrepresents the holding of *Houston*. In that portion of both of these opinions relied upon by Plaintiff, the issue was whether prosecutorial immunity applied to *Brady* claims against a prosecutor who was not involved in prosecution of the plaintiff at the time the prosecutor discovered the *Brady* material. In *Houston*, the basis for allowing the claim to go forward against the defendant assistant state's attorney was not that he "failed to correct" his colleagues' mistakes after conviction once evidence was discovered that the criminal defendants may not have been guilty (see Pl. Response, p. 14), but that absolute immunity did not apply to the defendant prosecutor for the claim that he failed to disclose exculpatory evidence he discovered after the criminal trial was over, while defendant's direct appeals were pending, where the prosecutor was no longer involved in the prosecution of plaintiff or personally involved in the appeal when he discovered the exculpatory evidence.

In *Patterson,* plaintiff's claim is that the elected State's Attorney, prior to assuming office and while in private practice, personally learned facts from former clients which was purportedly exculpatory as to plaintiff and his claims of a pattern of abuse of suspects by Chicago police

department personnel and, once assuming office, the State's Attorney suppressed that "evidence" while plaintiff's post-conviction proceedings were still pending. As the district court noted, State's Attorney Devine had no involvement in plaintiff's arrest, interrogation, conviction, or appeals. 328 F. Supp. 2d at 893. Citing *Houston*, Judge Gottschall noted that, "A prosecutor who is not directly involved in the prosecution of a case may still be guilty of a *Brady* violation based on his suppression of exculpatory evidence during post-conviction proceedings." *Id.* at 893-94. Defendants note that the *Patterson* court did not reach any conclusion as to what obligation may exist, as a matter of law, as to a lawyer elected to a public prosecutorial position with respect to knowledge learned while in private practice relating to alleged former clients. See *Patterson*, *id.* at 894 n. 4.

In the case before this Court, any arguable *Brady* claim against ASA Shearer would necessarily arise out of the allegations that he obtained allegedly exculpatory documents or information from the Secretary of State's Office while he was prosecuting Plaintiff and that he failed to provide the documents to Plaintiff. There is no allegation that any new purportedly exculpatory evidence was discovered by Shearer after Plaintiff's trial and conviction, although Plaintiff's post-conviction defense attorney allegedly obtained the documents directly from the Secretary of State's office. (See Complaint, ¶¶ 57-60.) Plaintiff's allegation against ASAs Ertler, Doss, Dalkin and Stack, who Plaintiff acknowledges were assigned to his case (see Complaint, ¶ 71), is that even though this evidence was provided to them, they wrongfully continued to defend the post-conviction petition. As prosecutors assigned to Plaintiff's post-conviction proceedings, even if it were alleged that the allegedly exculpatory documents were independently obtained for the first time by Ertler, Doss, Dalkin and Stack in the course of the post-conviction proceedings (which they weren't) and that they thereafter did not provide the documents to Plaintiff, they would clearly be entitled to immunity from any *Brady* claim because they were directly involved in the prosecution. Therefore, *Patterson* and *Houston* have no application here.

The cases of *Morley v. Walker*, 175 F.3d 756 (9th Cir. 1999), *Whitaker v. Gacetti*, 486 F.3d 572 (9th Cir. 2007), *Johnson v. Dossey*, 515 F.3d 778 (7th Cir. 2008), and *Smith v. Updegraff*, 744 F.2d 1354 (8th Cir. 1984), are likewise not helpful to Plaintiff. (See Response, pp. 14, 16.) In *Morley*, the prosecutor was alleged to have executed an oath in support of an arrest warrant. This conduct, where the prosecutor is acting as a witness, is clearly not entitled to

absolute immunity, as found by the Supreme Court in *Kalina v. Fletcher*, 522 U.S. 118 (1997), cited by the *Morley* court.

*Whitaker v. Gacetti* involved only a claim of qualified immunity, not absolute prosecutorial immunity. There, the defendant prosecutor had participated in falsifying a warrant application that was used to obtain a wiretap. Information gained from the wiretap was used to have the police surveil several locations, after which the police obtained search warrants and seized drugs and money, after which they arrested plaintiffs. It is easy to see why absolute prosecutorial immunity was not an issue in *Whitaker.* The alleged conduct of a prosecutor in falsifying warrant applications as part of the underlying police investigation in order to obtain evidence to have suspects arrested would clearly be characterized as investigative under the Supreme Court's decision in *Buckley*.

Likewise in *Johnson v. Dossey*, the prosecutor was alleged to have been part of an investigation of a fire with a number of police officers, all of whom ignored the findings of the DuPage County Fire Investigation Task Force that the cause and origin of the fire were indeterminative and caused the plaintiff to be arrested. Again, the allegations in *Johnson* closely parallel *Buckley*, in that the defendant prosecutor is alleged to have been involved in the early stages of a law enforcement investigation, prior to the time the plaintiff has been arrested, and engaged in conduct which led to the arrest of the plaintiff. In *Smith v. Updegraff*, the defendant prosecutor was accused of hiring a former police officer to work undercover to "get" plaintiff, who had been discharged from the Sheriff's office, any way he could and threatened to prosecute plaintiff if he criticized the Sheriff's Office during his discharge hearing. The *Smith* court found that the defendant prosecutor's alleged conduct was outside the scope of his prosecutorial duties and wholly unrelated to his role as an advocate. The Supreme Court's decision in *Hartman v. Moore*, *supra*, decided well after *Smith,* clarifies that the prosecutor in *Smith* would have been entitled to immunity from any retaliatory prosecution claim. In the case before this Court, Plaintiff himself has alleged he was stopped and arrested by defendant police officers for being in possession of a stolen motor vehicle and that the State's Attorney's Office initiated charges against him based on the police report. (Complaint, ¶¶ 19-25.) Therefore, *Morley* and *Whitaker* have no application here.

Finally, Plaintiff cites *Schrob v. Catterson*, 948 F.2d 1402 (3rd Cir. 1991), for the proposition that prosecutors are not entitled to immunity for attempts to negotiate release from

liability. (Response, p. 14.) At issue in *Schrob*, which involved civil forfeiture proceedings, was the alleged misconduct of the defendant prosecutor in obtaining a seizure warrant and thereafter the retention and mismanagement of the seized property. It is worth noting that, although the prosecutor was alleged to have obtained the seizure warrant on the basis of misstatements to a magistrate judge, the *Schrob* court found that he was entitled to absolute immunity for initiation of the underlying *in rem* prosecution and for his actions in seeking the seizure warrant. 948 F.2d at 1413, 1417. In so holding, the *Schrob* court observed that in *Imbler*, the court recognized that the prosecutor's role as an advocate may take the prosecutor beyond the confines of the courtroom. 948 F.2d at 1414.

As to the remaining conduct alleged, the *Schrob* court held that the prosecutor was acting outside the role of a prosecutor and, therefore, not entitled to immunity for his actions concerning the retention and alleged mismanagement of the seized property, finding that his management and negotiations concerning return of the property were not directly related to the judicial process. In *Henzel v. Gerstein*, 608 F.2d 654 (5th Cir. 1979), also cited by Plaintiff on this point (Response, p. 19), the issue was not fully developed and dealt with parole, rather than the underlying criminal prosecution. It is not discernable from the Fifth Circuit's opinion whether there were any pending parole proceedings in connection with which the prosecutors could have been acting at the time of the alleged offer. The prosecutors were found to be immune from plaintiff's other claims, however, which included: filing an information without investigation, filing charges without jurisdiction, filing a baseless detainer, offering perjured testimony, suppressing exculpatory evidence, refusing to investigate plaintiff's complaints about the prison system, and threatening him with further prosecution. 608 F.2d at 657. In the case before this Court, all of the conduct alleged of the ASA Defendants was directly related to the criminal trial and post-conviction proceedings of Plaintiff and, therefore, within the scope of absolute immunity. Their alleged conduct in seeking to secure a type of release-dismissal agreement in connection with the underlying criminal prosecution is entitled to immunity as well.

Although Plaintiff appears to suggest that a prosecutor's negotiation of a release-dismissal order is unethical in general (Response, p. 18), this is not the case. In *Newton v. Rumery*, 480 U.S. 386 (1987), the Supreme Court considered a related issue of whether a court properly may enforce an agreement in which a criminal defendant releases his right to file an

action under §1983 in return for a prosecutor's dismissal of pending criminal charges. 480 U.S. at 389. Finding that release-dismissal agreements may further legitimate prosecutorial and public interests, the Court rejected the court of appeals holding that such agreements are invalid *per se*. 480 U.S. at 397. As the court explained, "In many cases a defendant's choice to enter into a release-dismissal agreement will reflect a highly rational judgment that the certain benefits of escaping criminal prosecution exceed the speculative benefits of prevailing in a civil action." *Id.* at 1192. *Cf. Redwood v. Dobson*, 476 F.3d 462, 467 (7th Cir. 2007)("for so far as §1983 and the Constitution are concerned, criminal charges may be dismissed in order to facilitate civil settlement").

Implicit in the *Newton* court's holding that such agreements may be enforced is that release-dismissal agreements serve a prosecutorial purpose, as do plea bargains. Although observing that the analogy between plea bargains and release-dismissal agreements is not complete, the court found that while the benefits the State may realize in particular cases from release-dismissal agreements may not be as tangible, they are not insignificant. 480 U.S. at 394 n. 3. The court noted the connection to prosecutorial discretion and the decision whether to prosecute. *Id.* at 396.

In fact, the Seventh Circuit has specifically found, in the context of a §1983 action, that a state's attorney's actions in dismissing criminal charges in exchange for a release from civil liability for the City and police officers "was within the 'quasi-judicial' function of the prosecutor and not among the 'investigatory' activities normally performed by laymen . . .'" *Boyd v. Adams*, 513 F.2d 83, 86 (7th Cir. 1975). Although the court's opinion in *Boyd* predated the Supreme Court's decision in *Imbler* by a year, the Seventh Circuit found in *Boyd* that the State's Attorney and his assistant were immune from monetary liability for damages under §1983 applying a functional analysis that mirrors that of the *Imbler* court. Consequently, for purposes of absolute immunity, the SAO Defendants' alleged actions in seeking to negotiate a release-settlement agreement in connection with the resolution of Plaintiff's criminal prosecution is likewise entitled to immunity and Plaintiff's citation to authority from other jurisdictions has no application.

It is absolutely clear from the factual allegations of Plaintiff's Complaint, notwithstanding the rhetorical hyperbole which permeates Plaintiff's brief and his conclusory characterizations of ASA Shearer's conduct, that ASA Shearer was the trial attorney for

Plaintiff's criminal trial and his alleged conduct took place in the course of the trial. Plaintiff's argument that ASA Shearer's alleged actions regarding the presentation of the complaining witness are not entitled to immunity because, although they took place during Plaintiff's criminal trial, some of the alleged actions "took place outside the presence of the court" (see, *e.g.*, Response, p. 15) is a position the Supreme Court itself recognized as "extreme" and "plainly foreclosed by our opinion in *Imbler* itself." See *Buckley*, 509 U.S. at 274.

What Plaintiff is really claiming is that ASA Shearer was preparing to present perjured testimony from the complaining witness identified in the police reports, or conspiring with the police to do so. However, such alleged conduct is clearly entitled to absolute immunity. See *Imbler v. Pachtman* (immunity for claims that prosecutor knowingly used false testimony); *House v. Belford*, 956 F.2d 711, 720-21 (7th Cir. 1992)(immunity for conspiracy to present perjured testimony). The strain in Plaintiff's argument is evident in his contention that "[ASA] Shearer was functioning as a witness when he falsely testified before the trial court that Todd Johnson would testify to ownership, condition and lack of consent" (Response, p. 16) It is difficult to comprehend how the representation to the court (even though allegedly false) as to the stipulated testimony of a witness can be considered anything other than the act of an advocate and this argument is clearly without merit.

The cases cited by Plaintiff, *Milstein v. Cooley*, 257 F.3d 1004 (9th Cir. 2001), and *Zahrey v. Coffey*, 221 F.3d 342 (2nd Cir. 2000), do not support his argument here. (See Response, p. 16.) *Milstein* is cited for the proposition that a prosecutor is not immune for the use of fabricated evidence. The defendant prosecutors in *Milstein* were accused of obtaining false statements from a witness before a grand jury was empanelled and prior to the arrest of plaintiff. 257 F.3d at 1011. The *Milstein* court found that, because the defendants conducted their investigation before empanelling the grand jury, this conduct done in the role of a detective, rather than as an advocate, and was not protected by immunity under *Buckley .v Fitzsimmons. Id.* The prosecutors were found entitled to immunity for their alleged misconduct in obtaining an indictment from the grand jury, though. 257 F.3d at 1011-1012.

As in *Whitaker*, *supra*, *Zahrey v. Coffey* involved a claim of qualified, not absolute immunity. The paintiff in *Zahrey* only sought to hold the defendant prosecutor responsible for his alleged misconduct during the investigatory stage of his criminal case, as part of an alleged conspiracy that coerced two witnesses to falsely accuse him of crimes. The plaintiff in *Zahrey*

acknowledged that the prosecutor was entitled to absolute immunity for his conduct during the prosecutorial stage, including presenting the allegedly false testimony – the "fabricated" evidence – to the grand jury and making allegedly false statements at a bail revocation hearing. 221 F.3d at 345, 347. As to the issue of qualified immunity before it, the *Zahrey* court held that there is a constitutional right not to be deprived of liberty as a result of the fabrication of evidence by a government officer acting in an investigatory capacity, where the officer foresees that he himself will use the evidence with a resulting deprivation of liberty. 221 F.3d at 344. Here, the SAO Defendants were acting in a prosecutorial role and, therefore, *Zahrey* is inapposite.

Significantly, the *Zahrey* court recognized that its decision was in conflict with the Seventh Circuit's holding in *Buckley v. Fitzsimmons*, 20 F.3d 789 (7th Cir. 1994), decided on similar facts after remand from the Supreme Court ("*Buckley* II"). *Zahrey*, 221 F.3d at 354. In *Buckley* II, the court held that obtaining testimony from a potential witness known to be false does not violate any constitutional right. 20 F.3d at 795-96. The court further found: "Prosecutors are entitled to absolute immunity for actions as advocates before the grand jury and at trial even if they present unreliable or wholly fictitious proofs." 20 F.3d at 795. The court explained, "events not themselves supporting recovery under §1983 do not become actionable because they lead to injurious acts for which the defendants possess absolute immunity." *Id.* at 796. To the extent that *Zahrey* conflicts with *Buckley* II, Plaintiff's reliance thereupon is misplaced and this Court should obviously follow *Buckley* II.

Plaintiff's contention that the SAO Defendants are not entitled to immunity with respect to their actions during the pendency of his post-conviction petition is equally meritless. (See Response, pp. 17-19.) Most of Plaintiff's argument here is premised on the contention that these defendants did not take action to dismiss the charges against Plaintiff, although they allegedly knew he was innocent, and that they "delayed" the proceedings relating to his pending post-conviction petition.[2] (See Response, pp. 17, 20.) The State's Attorney's decision to continue a prosecution based upon the available evidence is a classic prosecutorial function. *See, e.g., People ex rel. Daley v. Moran*, 94 Ill. 2d 41, 45 (1983) (holding that the State's Attorney is the

---

[2] Technically, because proceedings under the Illinois Post Conviction Hearing Act are collateral proceedings to the underlying criminal prosecution (see 725 ILL. COMP. STAT. 5/122-1 *et seq.*), which was final, the State's Attorney's Office could not simply unilaterally reverse Plaintiff's conviction in any event.

constitutional officer with exclusive discretion in the initiation and management of a criminal prosecution.) Under *Imbler* and its progeny, such absolute prosecutorial functions are entitled to absolute immunity.

Plaintiff is really arguing that absolute immunity should not apply because the SAO Defendants allegedly acted unethically and that therefore their actions had not connection to their role as advocates for the State. (See Response, pp. 17-18.) The SAO Defendants find such accusations unwarranted and maintain they did nothing wrong in this case. Plaintiff seeks to make much out of the fact that title to the car Plaintiff was alleged to have had passed to an insurance company after the date it was reported stolen, prior to the time Plaintiff was arrested, and then to a salvage company after the car was recovered, prior to the date of Plaintiff's trial. However, for purposes of this motion and without reliance on any facts concerning the merits of Plaintiff's claims, Plaintiff's allegations of misconduct do not negate the application of absolute immunity from a §1983 action for damages based on the alleged conduct of these defendants. See *Imbler*, 424 U.S. at 429.

Although the SAO Defendants submit that Plaintiff's claims against SA Devine in his individual capacity fail, to the extent he can somehow be construed as acting together with the other individual SAO Defendants, Plaintiff fares no better as to the application of absolute immunity to his claims against Devine and he is also entitled to absolute immunity. "Because all of [Plaintiff's] allegations against Devine arise from the performance of prosecutorial duties by an assistant state's attorney and all of the allegations are directly related to the prosecution of the charges against [Plaintiff] in the underlying criminal proceedings . . . , all of Devine's alleged conduct and the alleged conduct of his assistant state's attorney(s) constitute activities and actions 'within the scope of their prosecutorial duties', integral to the judicial process. [Plaintiff's] claim against Devine in his individual or personal capacity is barred by absolute prosecutorial immunity." *Carrillo v. Chambers*, 2006 U.S. Dist. LEXIS 35895, *16 (N.D. Ill. May 18, 2006)(Darrah, J.). See also *Hamilton v. Daley*, 777 F.2d 1207, 1213 n. 5 (7th Cir. 1985)("Since absolute immunity protects prosecutorial decisions, supervision of the prosecutors who make these decisions is similarly immune.")

In the end, Plaintiff is left with the argument that public policy will not be served by the application of absolute immunity in this case, either because it would sanction "outrageous conduct", or it would leave Plaintiff with no remedy. (See Response, pp. 19-21.) As the SAO

Defendants have already noted above, at pages 2-3, the Supreme Court took these considerations into account in *Imbler* in holding that prosecutors were entitled to absolute immunity from claims for damages under §1983. The language cited by Plaintiff from *Houston v. Partee* (Response, p. 20) is contrary to the Supreme Court' decision in *Imbler* and is therefore questionable. Plaintiff may disagree with the result reached by the Supreme Court, but that does not affect the SAO Defendants' entitlement to absolute immunity from Plaintiff's claims for money damages under §1983 in this matter for their actions in connection with Plaintiff's criminal prosecution. Immunity does not apply on a case by case basis, depending on whether public policy is best met in a particular case.

**B.    Plaintiff's state law claims are also barred by absolute quasi-judicial immunity.**

(Reply to Response, pp. 21-23)

In responding to the SAO Defendants' argument that they are entitled to absolute prosecutorial immunity from Plaintiff's state law claims as well, Plaintiff confuses absolute quasi-judicial immunity afforded prosecutors, as discussed in *White v. City of Chicago*, 369 Ill. App. 3d 765 (1st Dist. 2006), *Aboufaris v. City of DeKalb*, 305 Ill. App. 3d 1054, 1065 (2nd Dist. 1999), *Coleson v. Spomer*, 31 Ill. App. 3d 563, 566 (5th Dist. 1975), *Barham v. McIntyre,* 2007 U. S.Dist LEXIS 39063 *23-26 (S.D. Ill. May 30, 2007), and *Houston v. Markey*, 2007 U.S. Dist. LEXIS 41440 (N.D. Ill. May 30, 2007), all cited by the SAO Defendants in their memorandum in support of their motion to dismiss (Part I.B., pp. 9-12), with public official immunity as discussed in *Aboufaris* and other cases not involving prosecutors. Plaintiff stretches the holding in *Cook v. Weber*, 698 F.2d 907 (7th Cir. 1983), to suggest that it held that a dismissal of federal claims pursuant to absolute immunity under *Imbler* does not require dismissal of state law claims on the basis of immunity. (Response, p. 21.) In *Cook*, the Seventh Circuit merely held it is the province of Illinois courts, not federal courts, to determine the extent of state law prosecutorial immunity. *Id*. at 910. Pursuant to the authority cited by the SAO Defendants, under state law absolute immunity applies as well.

Judge Andersen recently had occasion to address this issue and many of the arguments raised by Plaintiff herein, including the argument that the allegation of malice is sufficient to defeat a claim of absolute immunity under state law, in the matter of *Hughes v. Krause*, 2008 U.S. Dist. LEXIS 54461 (N.D. Ill. July 17, 2008). Judge Andersen's discussion in his

Memorandum Opinion and order, granting defendant assistant state's attorney's motion to reconsider his initial decision as to the application of controlling authority with respect to the scope of prosecutorial immunity under Illinois law and dismissing plaintiff's state law claims pursuant to FRCP 12(b)(6), is instructive. Although lengthy, the SAO quotes extensively from it here by way of reply to Plaintiff's argument on this point:

> In our previous Memorandum Opinion, we determined that [the defendant assistant state's attorney] acted firmly within the scope of his official capacity when he weighed evidence and chose to pursue the criminal case against plaintiff and, therefore, was entitled to federal prosecutorial immunity. Upon further consideration, we find that [the defendant assistant state's attorney] is entitled to that same absolute prosecutorial immunity under state law as well. Relying on *Aboufaris v. City of DeKalb*, 305 Ill. App. 3d 1054, 713 N.E. 2d 804, 239 Ill. Dec. 273 (2nd Dist. 1999), in our previous Memorandum Opinion, we recognized that the Illinois Appellate Court analyzed the issue of prosecutorial immunity under the rubric of public official immunity. Although the Illinois Appellate Court in *Aboufaris* may have discussed the doctrine of public official immunity and a lack of malice requirement in order for the official to be afforded protection for acts performed within their official capacity, the Appellate Court ultimately concluded that "a prosecutor acting within the scope of her prosecutorial duties enjoys immunity from civil liability, the same immunity afforded to the judiciary." 305 Ill. App. 3d at 1065. There is no question that the immunity afforded to the judiciary is absolute. Similarly in *White v. City of Chicago*, 369 Ill. App. 3d 765, 861 N.E.2d 1083, 308 Ill. Dec. 518 (1st Dist. 2006), the Illinois Appellate Court affirmed the dismissal of both state and federal law claims against the defendant prosecutors on the basis of absolute immunity.

> Although under Illinois law there is a doctrine of public official immunity which has a lack of malice requirement, such is not the immunity afforded prosecutors. Prosecutors, like judges, must be allowed to perform the functions of their jobs fearlessly and without fear of consequence.

> * * *

*Hughes*, 2008 U.S. Dist. LEXIS 54461 at ** 3-5.

The problem with reading a lack of malice requirement into prosecutorial immunity, as advanced by Plaintiff, is that *Aboufaris* itself, in which the prosecutor was found to have absolute immunity, involved a claim for malicious prosecution. 305 Ill. App. 3d at 1057. In Illinois, "[i]n order to establish a malicious prosecution action, the plaintiff must allege facts showing: (1) the commencement or continuance of an original criminal or civil judicial proceeding by the defendant; (2) the termination of the proceeding in favor of the plaintiff; (3) the absence of probable cause for such proceeding; (4) ***the presence of malice***; and (5) damages resulting to the plaintiff." *Swick v. Liautaud*, 169 Ill.2d 504 (1996)(internal quotes and citations

14

omitted)(emphasis supplied). By its very definition, any malicious prosecution claim against a prosecutor will contain allegations that the prosecutor acted with malice. To read a "lack-of-malice" requirement into prosecutorial immunity under Illinois law would be contrary to the absolute common law judicial immunity which was recognized by the *Imbler* court and which was applied to prosecutors in *White*, *Coleson* and *Aboufaris*. Therefore, because absolute immunity under state law is coextensive with immunity under federal law and Plaintiff's state law claims against the SAO Defendants are based on the same factual allegations contained in his §1983 claims, they are absolutely immune from the state counts as well.

**II.    This Court Lacks Subject Matter Jurisdiction Over Plaintiff's State Law Claims Because The Illinois Court Of Claims is the Exclusive Forum for Such Lawsuits**
(Reply to Response, pp. 23-27)

Plaintiff somewhat mischaracterizes the SAO Defendants' argument that this Court lacks subject matter jurisdiction over Plaintiff's state law claims against them, arguing that the Eleventh Amendment does not bar his claims. (Response, pp. 23-24.) The Eleventh Amendment would of course bar any official capacity claims under §1983 against the SAO Defendants, or any claims against the Cook County State's Attorney's Office itself. (See SAO Defendants' memorandum in support of their motion to dismiss, pp. 16, 18-19.) The SAO Defendants do, however, rely on at least three Illinois Appellate Court opinions holding that state law claims such as those brought by Plaintiff against the SAO Defendants here belong in the Illinois Court of Claims: *Sneed v. Howell*, 306 Ill. App. 3d 1149 (5th Dist. 1999); *Price v. State of Illinois*, 354 Ill. App. 3d 90 (1st Dist. 2004); and *White v. City of Chicago,* 369 Ill. App. 3d 765 (1st Dist. 2006). Plaintiff also attempts to avoid the application of sovereign immunity by arguing that he has alleged the SAO Defendants are County, not State employees. (Response, p. 24.) This argument is frivolous, as discussed in Part V, below.

Given clear state law authority on the point, under *Omosegbon v. Wells*, 335 F.3d 668 (7th Cir. 2003), which holds that state rules of immunity are binding on federal courts with respect to state causes of action and that the federal district court could hear pendant state claims against state defendants only where the state court could have done so, this Court does not have supplemental jurisdiction over Plaintiff's state law claims. Neither *Goetzke v. Ferro Corp.*, 280 F.3d 766 (7th Cir. 2002), and *Truck Components Inc. v. Beatrice Co.*, 143 F.3d 1057 (7th Cir.

1998), cited by Plaintiff (Response, p. 26), deal with issues of state rules of immunity as to state causes of action, or purport to modify or overrule *Omosegbon*.

Plaintiff cites to no state Appellate Court opinion holding differently than the Appellate Court in *Sneed*, *Price* and *White*, and finding that similar claims against prosecutors may be heard in the Illinois trial court, much less any Illinois Supreme Court opinion doing so. In applying state law in federal courts, "When the 'state supreme court has not ruled on an issue, decisions of the state appellate courts control, unless there are persuasive indications that the state supreme court would decide the issue differently.'" *Help at Home, Inc. v. Medical Capital, LLC*, 260 F.3d 748, 753 (7th Cir. 2001); *Lexington Insurance Company v. Rugg & Knopp, Inc.*, 165 F.3d 1087, 1090 (7th Cir. 1999). In addition to citing no Illinois Supreme Court opinion deciding the issue differently than *Sneed*, *Price*, and *White*, Plaintiff makes no argument that there are persuasive indications the court would do so. Therefore, *Sneed*, *Price*, and *White* are controlling on this issue of state law immunity.

Plaintiff's reliance on *Senn Park Nursing Center v. Miller*, 104 Ill.2d 169 (Ill. 1984), is misplaced. (Response, p. 24.) *Senn Park* did not concern a tort claim for damages against the State, but rather a request for mandamus, a distinction found crucial by the court. 104 Ill.2d at 188-89. The *Senn Park* court compared its facts favorably with the case of *Bio-Medical Laboratories, Inc. v. Trainor*, 68 Ill.2d 540 (1977)(sovereign immunity does not prevent the filing in the circuit court of a suit seeking an injunction against a State official). 104 Ill.2d at 188. In *Welch v. Illinois Supreme Court*, 322 Ill. App. 3d 345 (3rd Dist. 2001), also cited by Plaintiff (Response, p. 24), the Illinois Appellate Court actually held that an allegation of malice toward the conduct of a State official does not divest the Illinois Court of Claims of jurisdiction over a tort claim against the State official when was the conduct was "in furtherance of the State employer's purposes." *Welch*, 322 Ill. App. 3d at 354. The test, therefore, is whether the alleged conduct was within the scope of the defendant's employment. *See, e.g., McPherson v. City of Waukegan*, 379 F.3d 430, 443-444 (7th Cir. 2004) (stating that "an employer is generally liable for an intentional tort committed by an employee only when the tort was in furtherance of his employment, 'that is, only if the employee's motive, or at least *a* motive, in committing the tort was to serve his employer'" (emphasis in original)).

Here, even when viewed most favorably to plaintiff, "[t]he facts alleged are consistent with an intent to further the business of the [State's Attorney's Office] and thus can be

considered within the scope of employment. For these reasons, the tort claim is properly viewed as a claim against the state for damages sounding in tort." *Welch*, 322 Ill. App. 3d at 354. Plaintiff has admitted that the SAO Defendants were "engaged in the conduct complained of in the course and scope of their employment while they were on duty." (Complaint, ¶ 181.), and alleges no facts supporting a contrary conclusion. This admission is binding.

Although Plaintiff also attempts to avoid dismissal by arguing that his claim are against the SAO Defendants in their "individual capacities" (Response, p. 24), determining whether an action constitutes a suit against the state does not turn on the formal designation of the parties. *Healy v. Vaupel*, 133 Ill. 2d 295, 308 (Ill. 1990). Even the cases cited by Plaintiff recognize this principle: see, *e.g.*, *Wozniak v. Conry*, 288 Ill. App. 3d 129, 132 (4th Dist. 1997)(citing *Healy*); *Village of Riverwoods v. BG Limited Partnership*, 276 Ill. App. 3d 720, 725 (1st Dist. 1995); *Loman v. Freeman*, 229 Ill. 2d 104, 112 (Ill. 2008)(citing *Healy*). *Nelson v. Murphy*, 44 F.3d 497 7th Cir. 1995), cited by Plaintiff, was decided before *Price* and *White* and is not controlling on this issue of state law immunity. Defendants would also note that *Orange v. Burge*, 2005 U.S. Dist. LEXIS 7234 (N.D. Ill. 2005) (Response, p. 24), was also decided before *White* and respectfully submit that it incorrectly applied state law on this point. *Scott v. O'Grady*, 975 F.2d 366 (7th Cir. 1992), also cited by Plaintiff (Response, p. 24), is a case dealing with Eleventh Amendment immunity in federal court.

It is clear that the real target of Plaintiff's law suit is the State's Attorney's Office, premised on his theory that it continued its prosecution of him even though it allegedly knew he was innocent of the charges against him. (See, *e.g.*, Response at 29: "For eight years, under Richard Devine's direction, the office he controls has been responsible for prosecuting [Plaintiff] for a crime he did not commit, fabricating evidence, suborning perjury, and concealing and withholding evidence of [Plaintiff's] innocence to cover-up its unlawful activities.") Plaintiff's misguided attempt to drag the elected State's Attorney in as a defendant under a quasi-*Monell* theory belies any protestation of Plaintiff to the contrary. (See, *e.g.*, Response at 28: "[SA Devine] is responsible for the *de facto* policies that govern the action of his office as well as his employees.") Law suits such as Plaintiff's absolutely affect important state interests in the vigorous prosecution of crime and can have a chilling effect in controlling the actions of the Office in future prosecutions.

In *White*, the court also rejected the claim, similar to that made by Plaintiff here, that the allegations of misconduct against the state's attorney defendants implicated some independent duty that the state's attorneys allegedly violated. (See Response, p. 27, citing *Loman v. Freeman*, *supra*, involving a claim that state-employed veterinarian breached the duty of care applicable to veterinarians.) In *White*, the court found, notwithstanding that the plaintiff had alleged that defendants were acting as investigators or administrators instead of advocates and that defendants violated their independent duties as attorneys, "[a]ny of defendants' duties stem from their status as agents of the State; 'unlike a physician or driver, [defendants] owed no other general duty' to plaintiffs." *White*, 369 Ill. App. 3d at 779-80. All of the alleged conduct of the SAO Defendants arose solely out of their employment with the Office of the Cook County State's Attorney and their duties as prosecutors. As such, Plaintiff's state law claims against them belong in the Illinois Court of Claims.

**III.    Plaintiff's Claims Against State's Attorney Devine In His Individual Capacity Fail As a Matter of Law.**

(Reply to Response, pp. 27-29)

Plaintiff's response to the argument that he fails to state a claims against State's Attorney Devine in his individual capacity makes clear that the State's Attorney had no personal involvement in Plaintiff's prosecution. He concedes he does not know Mr. Devine's involvement because he has not had the benefit of discovery (Response, p. 27), but relies on the fact that the State's Attorney's name appears on all filings of the office, or on the letterhead of the office, or in the signature block of pleadings. Plaintiff combines this speculative argument with an attempt to impose liability based upon Mr. Devine's "supervisory authority" over the SAO Defendants, notwithstanding there is no supervisory liability under §1983. (See Response, p. 28.) Furthermore, Plaintiff provides absolutely no authority supporting his contention that SA Devine may be vicariously liable "for his prosecutor's violations of the [Illinois] Rules of Professional Conduct", much less that any of the individual ASA defendants could themselves be liable in an action for damages under either §1983 or state law for their own alleged violation of said rules. Generally, state law does not create duties under the federal constitution, and violations of state law are by themselves insufficient to impose liability under §1983. *White v. Olig*, 56 F.3d 817, 820 (7th Cir. 1995). In the absence of anything more, it is simply not reasonable to infer that in an

office of over 850 prosecutors[3], the elected State's Attorney was personally involved in an individual possession of a stolen motor vehicle prosecution. Therefore, Plaintiff's claims against SA Devine in his individual capacity should be dismissed.

**IV.    Plaintiff Fails to State a Claim For Failure to Intervene Against the SAO Defendants.**

(Reply to Response, pp. 29-30)

In support of his failure to intervene claim against the SAO Defendants, Plaintiff states that defendants "do not cite to a single case that stands for the proposition that such a claim does not exist." (Response, p. 29.) The SAO Defendants did cite to authority identifying the basis of such a claim as defined by the Seventh Circuit, which applies to the duty of a peace officer to intervene to prevent fellow law enforcement officers from infringing the constitutional rights of citizens. Plaintiff does not cite to any authority supporting the expansion of such a claim to prosecutors or any persons other than law enforcement officers and, therefore, this claim should be dismissed for failure to state a claim. Essentially, Plaintiff raises the same arguments he did in opposition to the application of absolute prosecutorial immunity. In fact, notwithstanding that the SAO Defendants are entitled to absolute immunity from this claim as well, this claim appears to be an attempt to get around immunity, by attempting to make each of the prosecutors liable for the conduct of other prosecutors, when they would be immune from their own conduct. The radical expansion of a cause of action for failure to intervene advanced by Plaintiff, unsupported by any authority, should be rejected.

**V.    Plaintiff's Claim For *Respondeat Superior* Against Cook County Fails.**

(Reply to Response, pp. 30-31)

In response to the SAO Defendants' argument that Cook County cannot be held vicariously or directly liable for the conduct of the State's Attorney's Office or its employees, Plaintiff attempts to argue that the County is the principal of the SAO Defendants on the basis that the office itself is called the Office of the Cook County State's Attorney and the State's Attorney's Office is a part of Cook County, as well as the unsupported assertion that the office is subject to the control of the County. (Response, p. 30.) Plaintiff's attempt to impose substantive liability on the County supported by the argument that the State's Attorney's Office is a County agency or office, citing *Clayborne v. DuPage County*, WL 44290 (N.D. Ill. 2005), involving the

---

[3] See Cook County State's Attorney website at http://www.statesattorney.org/asaopp.htm.

Public Defender, without even addressing *Biggerstaff v. Moran*, 284 Ill.App.3d 196 (1st Dist. 1996), cited by the SAO Defendants and directly on point in holding that the County is not the employer of the State's Attorney's Office and not liable for the alleged conduct of Assistant State's Attorneys, is frivolous.

The SAO Defendants would concede that, under the Seventh Circuit's decision in *Robinson v. Sappington*, 351 F.3d 317 (7th Cir. 2003), the County has a duty to indemnify claims brought against State officials where the County funds the office of that state official. *See Robinson*, 351 F.3d at 337-340. Pursuant to state law, the County funds the SAO. This would make the County an indemnitor, however, not subject to substantive liability. See *Whitmore v. Lake County*, 424 F.3d 659, 676 (7th Cir. 2005)(affirming award of attorney fees to Lake County under Rule 11 based on plaintiff's attempt to hold Lake County substantively liable for the alleged conduct of the Lake County Sheriff, noting that under *Carver v. Sheriff of LaSalle County*, 324 F.3d 947, 948 (7th Cir. 2003), which *Robinson* applies to State officials, liability of the County is not substantive). Therefore, any substantive claims against the County should be dismissed.

WHEREFORE, for the above and foregoing reasons, together with those set forth in the SAO Defendants' memorandum in support of their motion to dismiss, defendants State's Attorney Richard A. Devine, Assistant State's Attorney Merle Shearer Assistant State's Attorney Mark Ertler, Assistant State's Attorney Rivanda Doss, Assistant State's Attorney Andrew Dalkin, Assistant State's Attorney Celeste Stack, and the County of Cook, pray that this Court dismiss Plaintiff's Complaint against them pursuant to FRCP 12(b)(1) and 12(b)(6), with prejudice.

<div style="margin-left:40%">

Respectfully submitted,

RICHARD A. DEVINE
State's Attorney of Cook County

By:    /s/ Stephen L. Garcia
       ARDC #06195546

       Patrick T. Driscoll, Jr.
       Deputy States Attorney
       Chief, Civil Actions Bureau

       Louis R. Hegeman
       Supervisor, Special Projects and Assignments
       Stephen L. Garcia

</div>

Assistant State's Attorney
500 Richard J. Daley Center
Chicago, Illinois 60602
(312) 603-5475