# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

KENNETH GORDON,           )
                                  )
         Plaintiff,          )
                                  )       No. 08 C 377
         v.             )
                                  )       Judge Marvin E. Aspen
RICHARD DEVINE, et. al,      )
                                  )
        Defendants.     )

## MEMORANDUM OPINION AND ORDER

Presently before are two Motions to Dismiss: one filed by Defendants Officer Doerge, Officer R. Baltazar, and Sergeant Mark O'Connor (collectively, "Defendant Officers"); and one filed by Defendants Richard A. Devine, Merle Shearer, Mark Ertler, Rivanda Doss, Andrew Dalkin, Celeste Stack, along with Cook County (collectively the "SAO Defendants"). The Defendant Officers argue that various counts of Plaintiff Kenneth Gordon's ("Gordon") Amended Complaint should be dismissed as time-barred or for failure to state a claim. For the reasons described below, we grant their motion in part and deny it in part. The SAO Defendants motion presents various arguments, including that the individual Defendant State's Attorneys are entitled to absolute immunity, that this court lacks subject matter jurisdiction over the state law claims against them, and that Cook County cannot be held liable as a matter of law. For the reasons described below, we grant their motion.

## BACKGROUND

At 4:30 a.m. on July 25, 2001, Defendant Officers pulled over and arrested Gordon near 931 N. Kilpatrick. (Compl. ¶¶ 19, 20.) Gordon alleges that Defendant Officers prepared a false

complaint and police report, which falsely charged him with possession of a stolen vehicle belonging to Arthur Johnson. (*Id.* ¶ 23.) Based on Defendant Officers' report, on July 26, 2001, the State filed a criminal complaint against Gordon for possession of Arthur Johnson's stolen vehicle. (*Id.* ¶¶ 24, 25.) The criminal complaint appeared to include Arthur Johnson's signature, however, it also indicated that the complainant was "Arthur Johnson/Todd Johnson." (*Id.* ¶¶ 24, 26.) Gordon alleges that neither Todd Johnson, nor Arthur Johnson signed the criminal complaint and that neither of them owned the car at issue. (*Id.* ¶¶ 27, 28.)

On August 13, 2001, Officer Doerge testified before a Cook County grand jury that he had personally spoken with Arthur Johnson, who said he had never given Gordon permission to possess his car. (*Id.* ¶¶ 32, 34, 35.) Gordon alleges that this testimony was "a complete fabrication." (*Id.* ¶ 33.) Based on this testimony, Gordon was indicted on August 16, 2001, for violation of 625 ILCS 5/4-103(a)(1), receiving or possession a stolen vehicle, and 720 ILCS 5-19-2, possession of burglary tools. (*Id.* ¶¶ 29, 30, 36.)

Gordon was arraigned on September 6, 2001, but his case was continued until September 20, 2001. (*Id.* ¶¶ 37, 39.) On that day, Gordon's public defender informed the court that the complaining witness's report was missing. (*Id.* ¶ 41.) After multiple continuances, the Defendant State's Attorneys informed the court on February 6, 2002 that the State was not ready for trial because the victim was not present. (*Id.* ¶ 42.) Gordon alleges that this implied that the prosecution had spoken to Arthur Johnson, when they had not. (*Id.*) Defendant State's Attorneys also told the court that they needed an additional continuance in order to obtain vehicle records. (*Id.* ¶ 43.)

On April 8, 2002, Shearer informed the court that he was still not ready for trial because

two officers were absent. (*Id.* ¶ 44.) That same day, Shearer also filed an answer to discovery, which indicated that the State might call "Arthur 'Todd' Johnson," a representative of Bionic Auto Parts and Sales, Inc., and representatives of Tech. Credit Union as witnesses. (*Id.* ¶¶ 45, 46.) Shearer also told the court that his office would give Gordon's attorney copies of any automobile records that it received. (*Id.* ¶ 49.)

Gordon later learned from Secretary of State records that "Todd Johnson" had surrendered title to the car on May 14, 2001. (*Id.* ¶¶ 57, 59.) These records also revealed that Go America Insurance possessed the car and that a salvage certificate had been issued to Bionic Auto Parts, showing that it had owned the car at the time of Gordon's trial. (*Id.* ¶ 59.) In addition, even though Defendant State's Attorneys had obtained these records from the Secretary of State and knew that "Arthur Johnson" had never owned the car, they never turned over these records to Gordon's counsel despite his requests. (*Id.* ¶¶ 47, 61-63.) Gordon alleges that withholding this evidence was a *Brady* violation and that Defendant Officers and Defendant State's Attorneys conspired to withhold this evidence in order to ensure his conviction. (*Id.* ¶¶ 61, 66.)

Gordon's bench trial was set for April 25, 2002. (*Id.* ¶ 50.) Just before the bench trial was about to begin, Shearer "intentionally and falsely informed" Gordon's public defender, Craig Rosenthal ("Rosenthal"), that "the 'owner' of the vehicle, 'Todd Johnson,' was on 'phone hold' and was willing and available to testify at trial that day." (*Id.* ¶¶ 50, 51, 64.) Rosenthal then spoke on the phone with someone who "falsely and intentionally identified himself as Todd Johnson." (*Id.* ¶ 52.) This person indicated that he owned the car, did not know Gordon, and had never given Gordon permission to use the car. (*Id.*) He also stated that the car was in

perfect condition at the time it was stolen. (*Id.*) Gordon alleges that Shearer made these false representations and arranged this call in order "to induce Rosenthal to enter into a false stipulation regarding the element of ownership, which Rosenthal ultimately ended up agreeing to." (*Id.* ¶¶ 51, 53, 65.) Shearer then filed the stipulation with the court, knowing the information contained within it to be false. (*Id.* ¶ 54.) For example, as explained above, Shearer stipulated that Johnson was the owner of the car, when in fact Defendants knew that Go America Auto Insurance, Inc. was the actual owner on July 25, 2001. (*Id.* ¶ 55.)

On April 25, 2002, Gordon was found guilty of possessing a stolen vehicle and not guilty of possessing burglary tools. (*Id.* ¶ 67.) He alleges that his conviction was "based on the false testimony of Defendant Officers and the fraudulent stipulation obtained by Defendant State's Attorneys." (*Id.*) On May 23, 2002, Gordon was sentenced to nine years in prison. (*Id.* ¶ 68.)

On February 23, 2004, Gordon filed a Petition for Post-Conviction based upon the Illinois State's Attorneys' violations of his civil rights. (*Id.* ¶ 69.) Specifically, he alleged prosecutorial misconduct and *Brady* violations. (*Id.*) Defendant State's Attorneys Ertler, Dalkin, and Doss, who reported to Defendant State's Attorney Stack, were assigned to Gordon's case. (*Id.* ¶ 71.) Gordon alleges that despite knowing about the "gross prosecutorial misconduct" that had occurred at his trial, Defendant State's Attorneys "engaged in a course of conduct designed to delay [his] post-conviction proceedings . . . in an effort to protect their own interests." (*Id.*) For example, one month prior to Gordon's scheduled release date, Ertler offered to release him if he would waive his civil rights claims against Defendant State's Attorneys. (*Id.* ¶ 72.) Furthermore, Gordon alleges that these actions "were taken outside of the scope of their prosecutorial functions" because Gordon had already been convicted. (*Id.* ¶ 73.)

4

Gordon served a total of four and one-half years in prison and then was placed on parole for one year and eight months. (*Id.* ¶ 74.) On June 14, 2007, after Gordon had been released, Judge Vincent Gaughan granted Gordon's petition for post-conviction relief, dismissed the indictment, and vacated his conviction and sentence. (*Id.* ¶ 75.)

On January 16, 2008, Gordon filed a Complaint against Defendant Officers, the City of Chicago ("City"), Cook County, and Defendant States' Attorneys in federal court. He amended his Complaint on June 6, 2008. His Amended Complaint alleges fifteen claims. He alleges four claims against Defendant Officers and the City: a § 1983 claim for violating his Due Process right to a fair trial, fair appeal, and fair post-conviction proceedings ("Count I"); a § 1983 claim for failure to intervene ("Count V"); a § 1983 claim for unlawful arrest ("Count XI"); and (4) a state law claim for false imprisonment ("Count XII"). He alleges three claims against Defendant State's Attorneys, and Cook County: a § 1983 claim for violating his Due Process right to a fair trial ("Count II"); a § 1983 claim for *Brady* violations ("Count III"); and a § 1983 claim for failure to intervene ("Count VI"). In addition, he alleges a § 1983 *Monell* claim against Cook County ("Count IX"); a claim under 745 ILCS 10/9-102 against the City and Cook County ("Count XIV"); and a respondeat superior claim against the City, Cook County, and the Office of the Cook County State's Attorney ("Count XV"). Finally, he alleges five claims against all Defendants: § 1983 conspiracy claim ("Count IV"); a state law claim for malicious prosecution ("Count VII"); a state law conspiracy claim ("Count VIII"); a state law claim for intentional infliction of emotional distress ("Count X"); and a state law claim for "negligence - willful and wanton conduct" ("Count XIII").

Defendants Officers now move to dismiss Counts IV, V, VIII, XI, XII, and XIII as

5

against them.  The SAO Defendants move to dismiss all claims against them.

## STANDARD OF REVIEW

The purpose of a motion to dismiss under 12(b)(6) is to test the sufficiency of the complaint, not to decide the merits of the case.  *Gibson v. City of Chi.*, 910 F.2d 1510, 1520 (7th Cir. 1990).  Accordingly, a court may grant a motion to dismiss under Federal Rule of Procedure 12(b)(6) only if a complaint lacks "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1974 (2007); *see Killingsworth v. HSBC Bank Nev., N.A.*, 507 F.3d 614, 618-19 (7th Cir. 2007); *EEOC v. Concentra Health Servs., Inc.*, 496 F.3d 773, 776-77 (7th Cir. 2007).  A sufficient complaint need not give "detailed factual allegations," but it must provide more than "labels and conclusions, and a formulaic recitation of the elements of a cause of action."  *Twombly*, 127 S. Ct. at 1964-65 (2007); *Killingsworth*, 507 F.3d at 618-19.  These requirements ensure that the defendant receives "fair notice of what the . . . claim is and the grounds upon which it rests."  *Twombly*, 127 S. Ct. at 1964 (quoting *Conley v. Gibson*, 355 U.S. 41, 47, 78 S. Ct. 99, 102 (1957)); *see also* Fed. R. Civ. P. 8(a).  In evaluating a motion to dismiss, we must accept all well-pleaded allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor.  *Thompson v. Ill. Dep't of Prof'l Reg.*, 300 F.3d 750, 753 (7th Cir. 2002).

## ANALYSIS

### I.  Defendant Officers' Motion to Dismiss

Defendant Officers argue that Counts IV, V, and VIII are time-barred under federal law, that Counts XI and XIII are time-barred under state law, and that Count XIII should be dismissed for failure to state a claim.  We address these arguments below.

**A. Federal Claims**: **Statute of Limitations**

Counts IV, V, and VIII allege various § 1983 claims. The parties do not dispute that the statute of limitations for these claims is two years;[1] however, they dispute when this limitations period began to accrue. Defendant Officers argue that Counts XI, IV, and V accrued at the time of Gordon's arrest on July 25, 2001, and thus are time-barred. Gordon argues that these claims did not accrue until his sentence was vacated on June 14, 2007.

While "courts must look to the law of the *state* to identify the length of the statute of limitations and any relevant tolling rules, 'the accrual date of a § 1983 cause of action is a question of federal law and is *not* resolved by reference to state law.'" *Johnson v. Garza*, No. 07 C 6862, 2008 WL 2700296, at *2 (N.D. Ill. July 11, 2008) (quoting *Wallace*, 127 S. Ct. at 1094-95 (emphasis in original)). Under federal law, § 1983 claims accrue "when a plaintiff has a 'complete and present cause of action,' namely, when a plaintiff 'can file suit and obtain relief.'" *Hill v. City of Chi.*, No. 06 C 6772, 2007 WL 1424211, at *3 (N.D. Ill. May 10, 2007) (quoting *Wallace*, 127 S. Ct. at 1095). This involves a two-part inquiry: we must first "identify the injury," and then "determine the date on which the plaintiff could have sued for that injury. That is the date that the plaintiff knew or should have known that his constitutional rights had been violated." *Savory v. Lyons*, 469 F.3d 667, 672 (7th Cir. 2006) (citations omitted); *see also Wilson v. Giesen*, 956 F.2d 738, 740 (7th Cir. 1992); *Hill*, 2007 WL 1424211, at *2.

Another important principle we must keep in mind when examining the statute of limitations of § 1983 claims, is whether permitting a § 1983 claim "would undermine a criminal

---

[1] To determine the statute of limitations for § 1983 claims, we look to Illinois' statute of limitations for personal-injury torts. *See Wallace v. Kato*, 127 S. Ct. 1091, 1094-95 (2007); *see also Gonzalez v. Entress*, 133 F.3d 551, 554 (7th Cir. 1998); *Johnson v. Guevara*, No. 05 C 1042, 2007 WL 2608525, at *1 n.1 (N.D. Ill. Sept. 5, 2007).

conviction if vindicated." *Wallace v. City of Chi.*, 440 F.3d 421, 425 (7th Cir. 2006) (citing

*Heck v. Humphrey*, 512 U.S. 477, 486-87, 114 S. Ct. 2364, 2372 (1994)). In *Heck v. Humphrey*,

the Supreme Court compared habeas corpus relief with § 1983 relief, and held that a § 1983

claim that "would necessarily imply the invalidity of conviction or sentence," cannot be brought

until the conviction has been invalidated. 512 U.S. at 487, 114 S. Ct. at 2372; *see also Wallace*,

440 F.3d at 425. In other words, the statute of limitations for a § 1983 action that *does*

necessarily imply the invalidity of a conviction does not begin to accrue until the conviction has

been invalidated.

In 2007, the Supreme Court adopted a distinctive accrual rule for § 1983 false arrest and

false imprisonment claims. *Wallace*, 127 S. Ct. at 1096-97, 1100. The Court held that "the

statute of limitations upon a § 1983 claim seeking damages for a false arrest in violation of the

Fourth Amendment, where the arrest is followed by criminal proceedings, begins to run at the

time the claimant becomes detained pursuant to legal process." *Id.* at 1100. The Court reasoned

that because false arrest and false imprisonment claims imply that the victim is detained without

legal process, they end, and thus accrue, "once the victim becomes held *pursuant to such*

*process*-when, for example, he is bound over by a magistrate or arraigned on charges." *Id.* at

1096 (emphasis in original).

## 1. False Arrest (Count XI)

The parties dispute when Gordon's false arrest claim accrued, and thus, when the two-

year statute of limitations began to run. Although neither party cites the *Wallace* decision, it

explicitly applies to Fourth Amendment false arrest claims.[2] *Id.* at 1100. Thus, Gordon's false

---

[2] Neither party cites the *Wallace* decision. Instead, Gordon argues that *Heck v.*
*Humphrey*, 512 U.S. 477, 114 S. Ct. 2364 (1994) and *Wiley v. City of Chicago*, 361 F.3d 994

arrest claim began to accrue at the date he became "detained pursuant to legal process." *Id.*

Here, Gordon was arraigned on September 6, 2001, and therefore, his false arrest claims accrued

on that date. *See id.* at 1100; *see also Hill*, 2007 WL 1424211, at *3. Accordingly, Count XI is

untimely and dismissed.[3]

## 2. Conspiracy (Count IV)

Defendant Officers argue that Gordon's conspiracy claim is untimely because it accrued

---

(7th Cir. 2004) control the analysis. As mentioned above, the *Heck* Court held that if a § 1983 claim "would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been [invalidated]." *Heck*, 512 U.S. at 486-87, 114 S. Ct. at 2372. However, the Court explained that some § 1983 claims do not necessarily imply the invalidity of a conviction. *Id.* at 487 & n.7. For example, due to "doctrines like independent source and inevitable discovery, . . . and especially harmless error," a § 1983 claim for an unreasonable search would not necessarily imply that a subsequent conviction was invalid. *Id.*

After *Heck*, the Seventh Circuit interpreted this language inconsistently in false arrest claims. First, in *Booker v. Ward*, the Court held that, after *Heck*, all § 1983 false arrest claims accrue at the time of arrest. 94 F.3d 1052, 1056-57 (7th Cir. 1996). However, in *Gauger v. Hendle*, 349 F.3d 354 (7th Cir. 2003) and *Wiley v. City of Chicago*, 361 F.3d 994 (7th Cir. 2004), the Court held that if a conviction is based solely on evidence obtained from a Fourth Amendment violation, then a § 1983 Fourth Amendment claim does not accrue until the charges are dismissed because challenging the arrest would implicitly challenge the validity of the subsequent conviction. 361 F.3d at 997-98. In 2006, the Seventh Circuit addressed this discrepancy in *Wallace v. City of Chicago*, 440 F.3d 421 (7th Cir. 2006), by overruling the *Gauger/Wiley* approach and adopting the *Booker* bright-line approach. 440 F.3d at 427. As explained above, *Wallace* was appealed to the Supreme Court, which then adopted its own bright-line test: False arrest claims accrue at the date legal process begins (e.g., the arraignment date). 127 S. Ct. at 1100.

Because we are bound by the recent Supreme Court *Wallace* decision, Gordon's argument that we should apply the *Wiley* exception to its § 1983 false arrest claim is unconvincing. (*See* Resp. at 12). Furthermore, we note that the district court decisions that Gordon cites applying the *Gauger/Wiley* approach, were decided before the Supreme Court's *Wallace* decision in 2007. *See e.g., Johnson v. Devan*, No. 04 C 1093, 2005 WL 693259 (N.D. Ill. Mar. 18, 2005); *Finwall v. City of Chi.*, No. 04 C 4663, 2005 WL 78948 (N.D. Ill. Jan. 12, 2005); *Hobley v. Burge*, No. 03 C 3678, 2004 WL 1243929 (N.D. Ill. June 3, 2004); *Akpulonu v. McGowan*, No. 03 C 4546, 2004 WL 2034084 (N.D. Ill. Aug. 12, 2004); *Santiago v. Marquez*, No. 97 C 2775, 1998 WL 160878 (N.D. Ill. Mar. 31, 1998).

[3] Gordon has not alleged any basis for equitable tolling, and therefore, we need not address this issue at this time. *See Hill*, 2007 WL 1424211 at *3.

either when he was arrested or when he learned of the alleged *Brady* violation, which at the very latest was when he filed his Petition for Post-Conviction Relief on February 23, 2004. (Mot. at 12.) Gordon responds that his claims are timely because under the *Heck* doctrine he could not have brought them until after his conviction was vacated as they would have necessarily impugned his conviction. (Resp. at 13.)[4]

To determine the accrual date of a conspiracy claim under § 1983, we must examine the accrual dates of each of the constitutional violations that make up the alleged conspiracy. *See Wilson*, 956 F.2d at 740 ("A civil conspiracy claim accrues when the plaintiff becomes aware that he is suffering from a wrong for which damages may be recovered in a civil action." (internal quotations omitted)); *Hill*, 2007 WL 1424211, at *4; *Castillo v. Zuniga*, No. 01-616, 2002 WL 398519, at *10 (N.D. Ill. Mar. 14, 2002); *Newsome v. James*, 968 F. Supp. 1318, 1325 (N.D. Ill. 1997). Gordon's conspiracy claim incorporates his Due Process Counts, violation of his right to a fair trial and exculpatory evidence. (Compl. ¶ 107; *see also* Resp. at 12.) These Counts include allegations that Defendant Officers withheld exculpatory evidence and fabricated inculpatory evidence. (Compl. ¶ 87.) If these constitutional claims are timely, then his conspiracy claim is timely.

Due Process claims regarding a plaintiff's right to a fair trial and exculpatory information pursuant to *Brady* necessarily raise questions about the validity of a conviction, and thus, are

---

[4] Gordon also argues that because his conspiracy claim includes a conspiracy to maliciously prosecute him, it did not begin to accrue until his malicious prosecution claim accrued in June 2007. (*Id.*). However, the existence of state law claim for malicious prosecution in Illinois "knocks out any constitutional theory of malicious prosecution." *Newsome*, 256 F.3d at 750-51; *Johnson*, 2008 WL 2700296, at *5. Because there is no underlying malicious prosecution constitutional tort, it cannot be the underlying constitutional violation used to determine the timeliness of Gordon's § 1983 conspiracy.

postponed under *Heck*. *See Johnson v. Dossey*, 515 F.3d 778, 782 (7th Cir. 2008) (finding that *Brady* claim was not controlled by *Wallace* and accrued on date of acquittal); *Hobley*, 2004 WL 1243929, at *7 (citing *Newsome*, 256 F.3d at 752). Thus, even if Gordon was aware of Defendants' *Brady* violations by February 23, 2004, he could not have sued at that time because doing so would have undermined the validity of his pending conviction. *Id.* Furthermore, Defendant Officers do not argue that Gordon's Due Process claims are untimely. Because Gordon's sentence was not vacated until June 4, 2007, his conspiracy claims based upon the alleged Due Process violations are timely. *See Heck*, 512 U.S. at 486-87, 114 S. Ct. at 2372.

### 3. Failure to Intervene (Count V)

Defendant Officers argue that their failure to intervene in Gordon's alleged wrongful arrest and alleged *Brady* violations accrued either at the time of arrest or at the time of knowledge of the alleged *Brady* violations. (Mot. at 12.) Like conspiracy claims, failure to intervene claims require an underlying constitutional violation. *Harper v. Albert*, 400 F.3d 1052, 1064 (7th Cir. 2005); *Hill*, 2007 WL 1424211, at *4. Thus, Gordon's failure to intervene claim is timely to the extent it encompasses timely constitutional actions. *Id.*

Here, Gordon alleges that "one or more of the Defendant Officers stood by without intervening" while other officers allegedly violated his constitutional rights. (Compl. ¶¶ 115-116.) These alleged violations include "deliberately charging [Gordon] of crimes he was innocent of, creating a false criminal complaint and police reports, and offering evidence in the form of perjured testimony to secure [Gordon's] indictment and conviction." (Resp. at 12-13.)

To the extent these allegations include Defendant Officers' failure to intervene in other Defendant Officers' Fourth Amendment false arrest violations, they are time-barred as explained

above. However, to the extent that they include Defendant Officers' failure to intervene to prevent Due Process violations, they are timely. *See Newsome*, 256 F.3d at 752 (explaining that police who fabricate evidence and conceal exculpatory evidence from prosecutors can be liable for violating a defendant's Due Process right to a fair trial); *Hobley*, 2004 WL 1243929, at *7 (relying on *Newsome* and holding that *Heck* applies to a Due Process claim based upon defendant officers' "fabricated inculpatory evidence and withheld exculpatory evidence").

## B. State Claims: Statute of Limitations

Defendant Officers also move to dismiss Counts VIII (conspiracy) and XII (false imprisonment) as time-barred. The Illinois Local Government and Governmental Employees Tort Immunity Act ("Immunity Act") provides that "no civil action ... may be commenced in any court against a local entity or any of its employees for any injury unless it is commenced within one year from the date that the injury was received or the cause of action accrued." 745 ILCS 10/8-101; *see also Long v. Williams*, 155 F. Supp. 2d 938, 943 (N.D. Ill. 2001). Thus, the relevant statute of limitations for Gordon's state law claims is one year.

In addition, Illinois personal injury claims begin to accrue when the plaintiff suffers an injury. *Hollander v. Brown*, 457 F.3d 688, 692 (7th Cir. 2006); *see also Hill*, 2007 WL 1424211, at *5. However, Illinois has adopted the discovery rule, which postpones accrual of the statute of limitations "until the injured plaintiff knows or reasonably should know that he has been injured and that his injury was wrongfully caused." *Hollander*, 457 F.3d at 692. Furthermore, it is worth noting that "*Heck* only applies to federal civil rights claims and not claims based on Illinois law." *Hill*, 2007 WL 1424211, at *5 (citing *Gauger*, 349 F.3d at 362).

## 1. False Imprisonment (Count XII)

Defendant Officers argue that Gordon's state false imprisonment claim accrued on the date of his arrest and is thus time-barred. Gordon responds that this tort required the invalidity of his conviction to accrue. (Resp. at 14.)[5] Examining Illinois law, we find that the Illinois false imprisonment claims generally accrue at the time of arrest because that is when the plaintiff becomes aware, or at least reasonably should be aware, or his injury. *See Hollander*, 457 F.3d at 692; *Hill*, 2007 WL 1424211, at *5 (finding that false imprisonment claim accrued at time of arrest). Here, Gordon was arrested on July 25, 2001, and thus his claim accrued on that date and is time-barred. Accordingly, Count XII is dismissed.

## 2. Conspiracy (Count VIII)

Defendant Officers also argue that Gordon's state-law conspiracy claim is untimely. Gordon responds that his conspiracy claim did not begin to accrue until his conviction was overturned, because his malicious prosecution claim did not accrue until then.

A conspiracy claim under Illinois law requires: "(1) a combination of two or more persons, (2) for the purpose of accomplishing by some concerted action either an unlawful purpose or a lawful purpose by unlawful means, (3) in the furtherance of which one of the conspirators committed an overt tortious or unlawful act." *Time Savers, Inc. v. LaSalle Bank, N.A.*, 371 Ill. App. 3d 759, 772, 863 N.E.2d 1156, 1167 (2d Dist. 2007) (quoting *Fritz v. Johnson*, 209 Ill. 2d 302, 317, 807 N.E.2d 461, 470 (Ill. 2004)).

---

[5] Gordon's precise arguments are unclear because he presents similar arguments for why both his false imprisonment and conspiracy claims are timely, despite the fact that these are distinct counts of his Complaint. For example, Gordon argues that his "false arrest and conspiracy claims each arise out of a conspiracy by the Defendant Officers, State's Attorneys and public entities to deprive him of his constitutional rights by falsely arresting and maliciously prosecuting him." (Resp. at 14.) Given this argument, it appears that he is referring to the underlying unlawful actions constituting his conspiracy claim, and not his false imprisonment claim.

Gordon's conspiracy claim alleges that all Defendants conspired to achieve "an unlawful purpose by unlawful means - namely, the violation of Ken's constitutional rights described above." (Compl. ¶ 139.) From this language, it is unclear what "unlawful act" Gordon is alleging that all of the Defendants conspired to commit. However, when addressing his state-law conspiracy claim, Gordon's response brief focuses on the timeliness of his malicious prosecution claim. (Resp. at 13 ("The Defendant Officers do not argue that Ken's state law malicious prosecution claims are time-barred."); *Id.* at 14 (referencing a conspiracy by all Defendants "to deprive him of his constitutional rights by falsely arresting and maliciously prosecuting him to conviction for a crime he did not commit).) Thus, for purposes of the present motion, we will assume that Gordon is alleging a conspiracy among all of the Defendants to maliciously prosecute him. *See Hrubec v. Nat'l R.R. Passenger Corp.*, 981 F.2d 962, 963-64 (7th Cir. 1992); *Milazzo v. O'Connell*, 925 F. Supp. 1331, 1340-41 (N.D. Ill. 1996) (allowing plaintiff to allege new facts and legal theories about her claim in her response brief because her complaint properly describes her legal claim).[6] Thus, if Gordon's malicious prosecution claim is timely, then this conspiracy claim is timely. *See Hill*, 2007 WL 1424211, at *6; *Hobley*, 2004 WL 1243939, at *8.

Examining Gordon's malicious prosecution claim, we find that it is timely. First, Defendant Officers have not challenged the timeliness of this claim. In addition, the Illinois Supreme Court has held that "[a] cause of action for malicious prosecution does not accrue until the criminal proceeding on which it is based has been terminated in the plaintiff's favor."

---

[6] Furthermore, we infer that Gordon is pursuing a malicious prosecution conspiracy because a conspiracy to further his false imprisonment would be time-barred. *See Hill*, 2007 WL 1424211, at *5 (false imprisonment claim accrued at time of arrest).

*Ferguson v. City of Chi.*, 213 Ill. 2d 94, 99, 820 N.E.2d 455, 459 (Ill. 2004); *see also Haynes v. City of Chi.*, No 07-CV-2231, 2008 WL 192481, at *3 (N.D. Ill. Apr. 29, 2008); *Hill*, 2007 WL 1424211, at *6. Because the proceedings terminated in Gordon's favor when his sentence was vacated on June 14, 2007, and he filed this less than a year later, his conspiracy claim for malicious prosecution is timely.[7]

## C. Failure to State a Claim: Negligent - Willful and Wanton Conduct (Count XIII)

Defendant Officers argue that the claim for "negligent-willful and wanton conduct" does not exist in Illinois because negligence and willful and wanton conduct are two totally separate standards.[8] Gordon responds that this cause of action does exist, and both parties have cited conflicting case law.

We acknowledge that there is "lingering confusion" regarding whether there is an independent tort for willful and wanton conduct in Illinois. *See Allen v. City of Zion*, No. 01 C 9216, 2003 WL 22078374, at *3 (N.D. Ill. Sept. 3, 2003). Part of this confusion stems from trying to reconcile Section 2-202 of the Immunity Act with cases holding that "willful and

---

[7] Defendant Officers argue that their contributions to the alleged conspiracy are time-barred because they only contributed to the alleged false arrest on July 25, 2001 and *Brady* violations, which Gordon became aware of at the latest on February 23, 2004. (Reply at 7.) They rely on *Austin v. House of Vision*, 101 Ill. App. 2d 251, 255, 243 N.E.2d 297, 299 (1st Dist. 1968) for the proposition that the statute of limitations of a tort begins to accrue at the time of injury. However, given that Gordon is alleging a conspiracy by all Defendants to maliciously prosecute him, which has the required element of a wrongful termination in plaintiff's favor, Gordon could not have been aware of this injury until the charges against him were vacated. Therefore, even though Defendant Officers' actions may have occurred more than a year ago, they may be included as part of the acts in furtherance of the conspiracy to maliciously prosecute Gordon.

[8] Defendant Officers also mention in passing that even if there is a cause of action for willful and wanton misconduct, Gordon's claims should be dismissed as time-barred. However, because they have failed to cite any case law or develop this argument in any other way, we will not address it here.

wanton conduct" is not a separate tort. *Compare* 745 ILCS 10/2-202 ("A public employee is not liable for his act or omission in the execution or enforcement of any law unless such act or omission constitutes *willful and wanton conduct*." (emphasis added)), *with Ziarko v. Soo Line R.R.*, 161 Ill. 2d 267, 274, 641 N.E.2d 402, 406 (Ill. 1994) ("There is no separate and independent tort of 'willful and wanton' misconduct.").

We find that this conflict can be reconciled by permitting a claim for "wanton and willful misconduct" against a public official, but not a private individual. *See Moberg v. City of W. Chi.*, No. 00 C 2504, 2002 WL 31398832, at *3 (N.D. Ill. Oct. 24, 2002) (distinguishing *Ziarko* because that case did not involve a claim against a public official or the Immunity Act). This approach has been taken by multiple courts within our district. *See Mercury Skyline Yacht Charters v. Dave Matthews*, No. 05 C 1698, 2005 WL 3159680, at *10 & n.7 (N.D. Ill. Nov. 22, 2005) (noting that while there is not an independent tort for willful and wanton conduct against private officials, there is one against "various government entities, officials, or employees in cases where an immunity statute establishes a standard of 'willful and wanton misconduct' as a basis for assessing liability"); *Moberg*, 2002 WL 31398832, at *3 ("The Court's own research, however, confirms that Illinois does recognize a cause of action for willful and wanton conduct against public officials."). In addition, this tort must exist in some contexts because the Illinois Supreme Court and Illinois Appellate Courts repeatedly recognize certain claims for willful and wanton conduct. *See also Abrams v. City of Chi.*, 211 Ill. 2d 251, 257, 811 N.E.2d 670, 674 (Ill. 2004) (citing *Harrison v. Hardin County Cmty. Unit Sch. Dist. No. 1*, 197 Ill. 2d 466, 475-76, 758 N.E.2d 848, 854 (Ill. 2001) (setting forth elements of cause of action for willful and wanton conduct) (Harrison, J., concurring); *see also Ozik v. Gramins*, 345 Ill. App. 3d 502, 516-17, 799

N.E.2d 871, 882-83 (1st Dist. 2003) (recognizing claim for willful and wanton conduct and stating that "[n]othing in *Ziarko*'s discussion or holding indicates that police officers cannot be held liable for injuries resulting from willful and wanton conduct in the execution and enforcement of the law").[9]  Accordingly, Gordon may pursue a claim for willful and wanton conduct against public officials.

Although we find that this cause of action exists, we do agree with Defendant Officers that Gordon's Complaint as stated is improper.  As indicated above, Count XIII of Gordon's Complaint is entitled "Negligence - Willful and Wanton Conduct."  (Compl. ¶¶ 170-178.) However, a cause of action for "willful and wanton conduct" is distinct from a cause of action for negligence.  *See Allen*, 2003 WL 22078374, at *3-4 (finding that negligence and willful and wanton conduct are two separate counts, and dismissing negligence count due to police officers' immunity under Tort Immunity Act); *Doe v. Calumet City*, 161 Ill. 2d 374, 389, 641 N.E.2d 498, 505 (Ill. 1994) ("[A] plaintiff can state a cause of action for simple negligence by showing a special duty exists, or can allege willful and wanton conduct alone."); *see also Ziarko*, 161 Ill. 2d at 275-79, 641 N.E.2d at 406-08 (distinguishing willful and wanton conduct from negligence). *But see Oropeza v. Bd. of Educ.*, 238 Ill. App. 3d 399, 402, 606 N.E.2d 482, 484-85 (1st Dist. 1992) (recognizing tort of willful and wanton negligence).  Given that Defendant Officers would

---

[9] Defendants rely on *Sparks v. Sparks*, 367 Ill. App. 3d 834, 837, 856 N.E.2d 575, 577 (1st Dist. 2006), but that case is distinguishable.  The plaintiff in *Sparks* had two complaints dismissed for malicious prosecution and attempted to replead that claim a third time as "willful and wanton prosecution." *Id.* at 836.  The court held that "Illinois courts do not recognize a cause of action for the willful and wanton filing of a lawsuit." *Id.* at 837.  The court further explained that it believed that the plaintiff was trying to circumvent the pleading requirements of malicious prosecutions by creating a new cause of action. *Id.* at 838.  Unlike the plaintiff in *Sparks*, Gordon is not suing for "willful and wanton prosecution" and is not trying to circumvent pleading requirements.

likely have immunity under the Immunity Act for a claim for simple negligence, we can reasonably infer that Gordon meant to state a claim only for "willful and wanton conduct." Accordingly, we will strike the term "Negligence" from his Complaint.

## II. SAO Defendant's Motion to Dismiss

The Defendant State's Attorneys argue that they are absolutely immune against Counts II, III, IV, and VI under federal absolute immunity law, and against Counts VII, VIII, and X under state immunity law. They further argue that we do not have subject matter jurisdiction to hear Counts VII, VIII, X, and XIII. Cook County argues that it cannot be held liable under Counts IX and XV because the State's Attorney's Office is not under its control. We address these arguments below.

## A. § 1983 Claims against Defendant Devine (Counts II, III, IV, and VI)

As the Defendant State's Attorneys correctly point out, "a plaintiff only may bring a § 1983 claim against those individuals personally responsible for the constitutional deprivation." *Doyle v. Camelot Care Ctrs., Inc.*, 305 F.3d 603, 614 (7th Cir. 2002); *see Sanville v. McCaughtry*, 266 F.3d 724, 740 (7th Cir. 2001); *Gossmeyer v. McDonald*, 128 F.3d 481, 495 (7th Cir. 1997). "Moreover, under § 1983, a plaintiff may not rely on the doctrine of *respondeat superior* to hold supervisory officials liable for the misconduct of their subordinates. Rather, the supervisory officials also must have had some personal involvement in the constitutional deprivation, essentially directing or consenting to the challenged conduct." *Doyle*, 305 F.3d at 614; *see Sanville*, 266 F.3d at 740; *Chavez v. Ill. State Police*, 251 F.3d 612, 651 (7th Cir. 2001).

Here, the Complaint simply does not allege that Devine had any personal involvement in the purported wrongdoing. In fact, Gordon's allegations regarding Devine focus on his role as

the head of the State's Attorney's Office. (*See* Compl. ¶¶ 33, 38, 40, 44-46, 49, 50, 56, 61)

(describing the other Defendant State's Attorneys as acting through, acting "under the direction

of," and representing Defendant Devine). Gordon does not identify any personal conduct

concerning Devine and does not allege that he had any actual knowledge of the actions taken by

the other Defendant State's Attorneys. "[S]upervisors who are merely negligent in failing to

detect and prevent subordinates' mistakes are not liable. . . . The supervisors must know about

the conduct and facilitate it, approve it, condone it, or turn a blind eye for fear of what they

might see." *Chavez*, 251 F.3d at 651 (quoting *Jones v. City of Chi.*, 856 F.2d 985, 992-93 (7th

Cir. 1988)); *see Sanville*, 266 F.3d at 740; *Gossmeyer*, 128 F.3d at 495. Because Gordon has not

alleged that Devine knew about the alleged misconduct and then acted with "deliberate, reckless

indifference," we dismiss the § 1983 claims against him. *Chavez*, 251 F.3d at 651. Any

remaining claims against Devine are subject to absolute and quasi-judicial immunity, as

discussed below.

**B. Prosecutorial Immunity**

**1. Absolute Immunity under § 1983**

The Defendant State's Attorneys argue that Gordon's complaint should be dismissed

based on absolute immunity.[10] Although the text of § 1983 does not specifically provide

immunity to anyone, the Supreme Court held that § 1983 must "be read in harmony with general

principles of tort immunities and defenses." *Imbler v. Pachtman*, 424 U.S. 409, 418, 96 S. Ct.

984, 989 (1976). In *Imbler*, the Court held that state prosecuting attorneys are entitled to

absolute immunity "in initiating a prosecution and in presenting the State's case." *Id.* at 431, 96

---

[10] Defendants do not raise a qualified immunity argument at this stage.

S. Ct. at 995. In *Burns v. Reed*, the Court explained that absolute immunity for prosecutors addresses more than "a generalized concern with interference with an official's duties." 500 U.S. 478, 494, 111 S. Ct. 1934, 1943 (1991). Instead, absolute immunity prevents litigation threats from interfering with "conduct closely related to the judicial process." *Id.* "That concern," the Court concluded, "justifies absolute prosecutorial immunity only for actions that are connected with the prosecutor's role in judicial proceedings, not for every litigation-inducing conduct." *Id.*

The Court has adopted a functional approach for determining whether a prosecutors' actions qualify for absolute immunity. *See Buckley v. Fitzsimmons*, 509 U.S. 259, 269, 113 S. Ct. 2606, 2613 (1993) (instructing courts to "look[] to 'the nature of the function performed, not the identity of the actor who performed it'") (quoting *Forrester v. White*, 484 U.S. 219, 229, 108 S. Ct. 538, 545 (1988)). In particular, *Buckley* differentiated between "acts undertaken by a prosecutor in preparing for the initiation of judicial proceedings or for trial," and acts that serve an "investigative function[] normally performed by a detective or police officer." 509 U.S. at 273, 113 S. Ct. at 2616. The former are protected by absolute immunity, while the latter are not. *Id.* Furthermore, courts must first presume that qualified immunity is sufficient, and only apply absolute immunity when the party seeking it meets his "burden of showing that such immunity is justified for the function in question." *Burns*, 500 U.S. at 486, 111 S. Ct. at 1940.

Applying this standard, courts have held that prosecutors are functioning in a "quasi-judicial" role and are protected by absolute immunity in light of the following allegations: knowingly using false testimony at trial and purposefully suppressing exculpatory evidence, *see id.* (citing *Imbler*, 424 U.S. at 430-431, 96 S. Ct. at 995); participating in a probable cause

hearing, *id.* at 489-90, 111 S. Ct. at 1941 (noting that prosecutors "were absolutely immune from damages liability at common law for making false or defamatory statements in judicial proceedings . . . , and also for eliciting false and defamatory testimony from witnesses"); willfully suppressing exculpatory evidence at grand jury proceedings, *id.* at 490, 111 S. Ct. 1942; knowingly using perjured testimony, *Briscoe v. La Hue*, 663 F.2d 713, 721-22 (7th Cir. 1981), *aff'd*, 460 U.S. 325, 103 S. Ct. 1108 (1983); providing false and misleading arguments to the court, *Lawrence v. Conlon*, No. 92 C 2922, 1995 WL 153273, at *4 (N.D. Ill. Apr. 6, 1995); destroying and falsifying line-up reports, *Heidelberg v. Hammer*, 577 F.2d 429, 432 (7th Cir. 1978); "initiat[ing] charges maliciously, unreasonably, without probable case, or even on the basis of false testimony or evidence," *Henry v. Farmer City State Bank*, 808 F.2d 1228, 1238 (7th Cir. 1986); and misrepresenting facts during plea negotiations, *Taylor v. Kavanagh*, 640 F.2d 450, 453 (2d Cir. 1981), *cited with approval in Mendenhall v. Goldsmith*, 59 F.3d 685, 691 (7th Cir. 1995).

However, courts have refused to extend absolute immunity to prosecutors accused of: advising police officers as to the legality of investigatory techniques, *Burns*, 500 U.S. at 494, 111 S. Ct. at 1944; investigating and seeking corroboration for evidence before an arrest, *Buckley*, 509 U.S. at 273-74, 113 S. Ct. at 2616; making statements to the press, *id.* at 277, 113 S. Ct. at 2617; and purposefully withholding exculpatory information discovered after conviction when the prosecutor was not actively participating on the appeal, *Houston v. Partee*, 978 F.2d 362, 367 (7th Cir. 1992).

With these principles in mind, we turn to whether the Defendant State's Attorneys are entitled to absolute immunity.

### a. Allegations Relating to Initiation of Prosecution and Grand Jury Proceedings

Gordon alleges that the Defendant State's Attorneys committed multiple misdeeds that resulted in violations of his due process rights. (Compl. ¶¶ 91-105.) Gordon first alleges that the Defendant State's Attorneys violated his rights when they decided to prosecute him, despite knowing that his indictment was false. (*Id.* ¶ 62.) However, a prosecutor's decision to initiate prosecution is clearly protected by absolute immunity. *Imbler*, 424 U.S. at 431, 96 S. Ct. at 995 (holding that "in initiating a prosecution . . . , the prosecutor is immune"). The act of deciding to initiate prosecution "must include the professional evaluation of the evidence assembled by the police." *Buckley*, 509 U.S. at 273, 113 S. Ct. at 2615. Therefore, any allegation that the Defendant State's Attorneys violated Gordon's due process rights by initiating prosecution against him, even knowing that his indictment was false, is protected by absolute immunity. Furthermore, to the extent that Gordon argues that the Defendant State's Attorneys violated his constitutional rights by directing false testimony before the grand jury (Compl. ¶¶ 32-35), that argument must also fail. Prior case law clearly extends absolute immunity to prosecutors where they knowingly solicited false testimony before the grand jury. *See, e.g.*, *Buckley*, 509 U.S. at 273, 113 S. Ct. at 2615 ("Those acts [entitled to absolute immunity] must include the . . . appropriate preparation for [the] presentation [of evidence] at trial or before a grand jury after a decision to seek an indictment has been made."). Therefore, the unnamed Defendant State's Attorney that directed Officer Doerge's testimony is entitled to absolute immunity and the claim against him is dismissed.

### b. Allegations against Shearer

Gordon also claims that Shearer violated his due process rights when he filed an answer

to discovery that "falsely indicated that the State may call 'Arthur 'Todd' Johnson as a witness, in spite of the fact that no one named Arthur Todd Johnson existed," (Compl. ¶ 45); failed to tender evidence in violation of *Brady v. Maryland*, despite telling the court that the State would do so (*id.* ¶¶47-49); "intentionally and falsely" indicated to Rosenthal, Gordon's trial counsel, that the owner of the vehicle was on "phone hold" and able to testify (*id.* ¶¶ 51-53); and set up a phone call between Gordon's attorney and the owner of the vehicle, despite the fact that the owner did not actually exist (*id.*). The Defendant State's Attorneys argue that Shearer is entitled to absolute immunity because "all of [his] alleged conduct . . . took place in the furtherance of his duties as the trial assistant at Plaintiff's criminal trial." (Mem. at 6.) We agree. Although Gordon is correct that courts must look to whether the defendant is engaged in prosecutorial or advocative functions (Resp. at 12), the court does not consider the motive behind actions taken by prosecutors. *See Henry*, 808 F.2d at 1238. Moreover, although Gordon is also correct that a prosecutor cannot simply title his action as advocative rather than investigative to receive absolute immunity, where the prosecutor is acting as an advocate for the State, a function that no one but a prosecutor can serve, he is entitled to absolute immunity. *See Buckley*, 509 U.S. at 272, 276, 113 S. Ct. at 2615-17. However, when a prosecutor functions in the same way as a police officer or an investigator, the prosecutor is subject to qualified rather than absolute immunity. *See id.*

In his Response, Gordon argues that Shearer is not entitled to absolute immunity because he "fabricated evidence and defrauded the trial court," thereby acting in an administrative or investigative function, rather than a prosecutorial or advocative function. (Resp. at 14-15.) In support of that argument, Gordon suggests that the Supreme Court has held that allegations that a

prosecutor fabricated evidence prevents the application of absolute immunity. (Resp. at 13 (citing *Buckley*, 509 U.S. at 276, 113 S. Ct. at 2617).) Although the *Buckley* Court refused to extend absolute immunity to prosecutors who fabricated evidence, the Court emphasized that its holding was based on the fact that the prosecutors' conduct occurred before the arrest. *Id.* at 273-75, 113 S. Ct. at 2616. Because the prosecutors acted before the arrest, the Court concluded that they could only be serving an investigatory rule. *Id.* Therefore, the *Buckley* holding prohibits the application of absolute immunity to prosecutors who fabricate evidence or commit other allegedly unconstitutional behavior only before they have probable cause to arrest someone, a time at which they cannot act as advocates.

Other cases refusing absolute immunity to prosecutors who allegedly suppressed exculpatory evidence or fabricated evidence, do not prohibit the application of absolute immunity here. The holdings in those cases were based on the fact that, in light of the context in which the prosecutor acted, the prosecutor's conduct was non-advocative. For example, in *Patterson v. Burge*, the prosecutor was not entitled to absolute immunity because he did not personally participate in the plaintiff's trial, not because his alleged conduct, suppressing evidence, prevented the application of absolute immunity. 328 F. Supp. 2d 878, 873-74 (N.D. Ill. 2004). Similarly, in *Houston v. Partee*, the Seventh Circuit held that a prosecutor who participated in a criminal defendant's trial, but not in his appeal, is not entitled to absolute immunity for suppressing evidence he discovered after trial. 978 F.2d 362, 366-67 (7th Cir. 1992). The Seventh Circuit came to that conclusion because the prosecutor was no longer serving as an advocate for the State once his assignment to trial was completed, not because the conduct of suppressing evidence is never entitled absolute immunity. *Id.*

**1. Allegations Relating to Shearer's Suppression of Evidence**

We find that Shearer's conduct was advocative and not investigative. Gordon did not allege that Shearer fabricated evidence before Gordon's arrest, as in *Buckley*. Instead, Gordon alleges that after his arrest and arraignment, Shearer suppressed exculpatory evidence, made misrepresentations to the court and to Gordon's attorney, and fabricated evidence to encourage a stipulation. (Compl. ¶¶ 44-54.) Because Shearer's action was part of his preparation for trial, it was advocative. First, Shearer's alleged suppression of exculpatory evidence "fit[s] soundly within the protection of absolute immunity afforded to prosecutors." *Bernal v. Shifflet*, No. 95 C 843, 1995 U.S. Dist. LEXIS, at *10 (N.D. Ill. July 13, 1995) (citing *Buckley*, 509 U.S. at 274, 113 S. Ct. at 2616; *Imbler*, 424 U.S. at 431-32 n.34, 96 S. Ct. at 995). In *Imbler*, the Court refused to distinguish between a prosecutor's purposeful use of perjured testimony and suppression of exculpatory evidence, holding that both are entitled to absolute immunity. 424 US. at 431-32 n.34, 96 S. Ct. at 995. Because Shearer allegedly suppressed exculpatory evidence while he was serving as the trial assistant on Gordon's case, he is entitled to absolute immunity for Gordon's claims that he violated *Brady* by suppressing exculpatory evidence.

**2. Allegations Relating to Shearer's Misrepresentations and Use of Fabricated Evidence**

Second, Shearer is also entitled to absolute immunity for any claims relating to his misrepresentations made to the trial court, including misrepresenting who the State planned to call as a witness, misrepresenting the owner of the vehicle in the written stipulation, and using false police reports, false criminal complaints, and false testimony during Gordon's bench trial. In making those misrepresentations, Shearer was conducting himself as only a prosecutor can. He was "presenting the State's case." *See id.* at 431, 96 S. Ct. at 995. Although Shearer made

some of the alleged misrepresentations in a discovery filing and in a written stipulation, rather than during trial, the *Imbler* holding provides absolute immunity for prosecutors whose "activities [are] intimately associated with the judicial phase of the criminal process." *Id.* at 430, 96 S. Ct. at 995. The judicial phase clearly includes discovery filings, stipulations made in preparation for trial, and presenting the State's case during trial. Furthermore, absolute immunity is meant to protect a prosecutor even for misrepresenting facts or law to a court during those phases of the judicial process. *See, e.g.*, *id.* (holding that a prosecutor who allegedly knowingly used false testimony at trial was protected by absolute immunity); *Burns*, 500 U.S. at 489-92, 111 S. Ct. at 1941 (holding that a prosecutor who allegedly withheld material information from a court at a probable cause hearing was entitled to absolute immunity because presenting evidence and arguments are advocative functions); *Heidelberg*, 577 F.2d at 432 (holding that prosecutors accused of falsifying a line-up report were entitled to absolute immunity); *Lawrence v. Conlon*, No. 92 C 2922, 1995 WL 153273, at *4 (N.D. Ill. Apr. 6, 1995) (extending absolute immunity to a prosecutor who provided the court with false and misleading arguments and misrepresented statutes because participating in a parole revocation hearing is within a prosecutor's role as an advocate for the State). Therefore, Gordon's claims against Shearer regarding his misrepresentations to the trial court are dismissed.

### 3. Allegations Regarding Shearer's Misrepresentations to Gordon's Attorney

In response to the Defendant State's Attorneys' arguments that Shearer is also entitled to absolute immunity for his misrepresentations to Rosenthal regarding the owner of the vehicle (Mem. at 6), Gordon argues that Shearer is not entitled to absolute immunity because he was engaged in an administrative or investigative function outside of the court. (Resp. at 15.)

Gordon argues that Shearer's actions "did not involve any professional evaluation of evidence or advocacy." *Id.* at 16. However, this argument fails to recognize that Shearer's alleged misrepresentation and fabrication of evidence was made to Rosenthal on the day his trial began, in preparation of his stipulations for trial. (Compl. ¶¶ 51, 13.) Despite the fact that Shearer's conduct occurred outside the court, he was still engaged in advocacy during the judicial phase of the criminal process. Negotiating, and entering into, stipulations are as much a part of the judicial process as plea or settlement negotiations. Although there are no known cases addressing absolute immunity for a prosecutor's willful use of false representations to induce a stipulation, other courts have addressed absolute immunity for a prosecutor's representations during plea and settlement negotiations.

For example, in *Taylor v. Kavanagh*, the Second Circuit held that absolute immunity applied to a prosecutor who, during plea negotiations with a criminal defendant, allegedly misrepresented to the defendant that a grand jury had already indicted him. 640 F.2d at 453. In *Mendenhall v. Goldsmith*, the Seventh Circuit cited *Taylor* and held that a prosecuting attorney was entitled to absolute immunity for his actions relating to settlement negotiations. 59 F.3d at 691. Similarly, in holding that a prosecutor was entitled to absolute immunity for questionable demands made during settlement negotiations, the court in *Bembenek v. Donohoo* reasoned that even though negotiations occurred outside the court, "when prosecutors talk to defense lawyers about resolving cases, they are engaged in an advocative function and thus entitled to absolute immunity." 355 F. Supp. 2d 942, 951-52 (E.D. Wis. 2005). The *Bembenek* court further explained, in dicta, that the prosecutor would have been entitled to absolute immunity even for making false statements during the settlement negotiations. *Id.* at 952.

Like statements made during plea or settlement negotiations, Shearer's conduct occurred while he was performing an advocative function. Although the conduct that Gordon alleges may be reprehensible, it is not enough to deny the protection of absolute immunity. Gordon argues that Shearer's actions were administrative because a police officer or clerk could have set up the phone call between Rosenthal and the alleged owner of the vehicle. (Resp. at 15.) However, this argument ignores the fact that the statements were made "just prior to the bench trial," and "in an effort to induce [Gordon's attorney] to enter into a false stipulation." (Compl. ¶ 51.) Only a prosecutor has the power to negotiate stipulations. Given that Shearer made the statements as part of preparation for trial, he is entitled to absolute immunity, regardless of his motives. Because Shearer is entitled to absolute immunity for his alleged conduct, the § 1983 allegations against him are dismissed.

**b. Post-Conviction Defendant State's Attorneys**

Gordon also alleges that actions taken by the post-trial Defendant State's Attorneys further violated his rights. (Compl. ¶¶ 70-75.) Gordon generally alleges that Ertler, Dalkin, and Doss, under the supervision of Defendant Stack, "engaged in a course of conduct designed to delay Ken's post-conviction proceedings and vigorously oppose them in an effort to protect their own efforts, in spite of the fact that they knew that gross prosecutorial conduct had taken place, and that [Gordon] was innocent of the charges." (*Id.* ¶ 71.) Specifically, Gordon claims that Ertler offered to release Gordon one month early on the condition that he waive any potential civil rights claims against the State Attorney's Office. (*Id.* ¶ 72.) The Defendant State's Attorneys argue, however, that defending a post-conviction appeal is a prosecutorial function for which they are entitled absolute immunity. (Mem. at 7-8.) We agree.

Prosecutors are entitled to absolute immunity for acts taken in post-conviction proceedings when they are personally involved in the appeal. *See, e.g.*, *Houston*, 978 F.2d at 366 (recognizing that a defendant prosecutor who personally prosecuted an appeal is entitled to absolute immunity for conduct taken during the appeal); *Spurlock v. Thompson*, 330 F.3d 791, 799 (6th Cir. 2003) ("Absolute immunity applies to the adversarial acts of prosecutors during post-conviction proceedings, including direct appeals, habeas corpus proceeding, and parole proceedings, where the prosecutor is personally involved in the subsequent proceedings and continues his role as an advocate."). If the prosecutor's involvement in a case ends at trial, however, he or she is not entitled to absolute liability for allegations that arise after the trial. *Houston*, 978 F.2d at 366. Gordon alleges that the Defendant State's Attorneys personally involved in prosecuting his appeal suppressed exculpatory evidence that was known by the State Attorney's Office even before trial. (Compl. ¶¶ 71) (stating that Ertler, Dalkin, Doss, and Stack were all assigned to Gordon's case).) Because each of these defendants were personally involved in the appeal, they are entitled to absolute immunity for their conduct in handling the appeal, including their alleged failure to tender exculpatory evidence and delay of post-conviction proceedings.

We conclude also that Ertler is entitled to absolute immunity for the release-agreement he offered Gordon. While participating in Gordon's post-conviction appeals, Ertler offered a release-dismissal agreement to Gordon. Although the agreement would have required Gordon to waive his right to sue under § 1983, offering such a release-dismissal agreement is within the prosecutorial responsibility. *See Town of Newton v. Rumery*, 480 U.S. 386, 398, 107 S. Ct. 1187, 1194-95 (1987) (reasoning that "release-dismissal agreements may further legitimate

prosecutorial and public interests," and are "directly related to his prosecutorial responsibilities"). Although one court has noted that such agreements would not be entitled to absolute immunity, that case was decided before the Supreme Court affirmed the use of such agreements. *See Henzel v. Gerstein*, 608 F.2d 654, 657 n.4 (5th Cir. 1979). Because the decision to offer such an agreement involves professional evaluation of the evidence, as required by *Buckley*, we hold that it is entitled to absolute immunity. Moreover, even if Ertler were not entitled to absolute immunity, we do not see how Gordon was injured by Ertler's offer. Gordon refused the agreement, thereby retaining any right to sue under § 1983. Therefore, Shearer, Ertler, Dalkin, Doss, Stack, and the other unnamed Assistant State's Attorneys are entitled to absolute immunity and all § 1983 claims against them are dismissed.

## 2. Quasi-Judicial Immunity Under State Law (Counts VII, VIII, X, XIII)[11]

---

[11] Defendants also argue that we do not have subject matter jurisdiction over the state law claims against the Defendant State's Attorneys because the Illinois Court of Claims has exclusive jurisdiction over such claims. (Mem. at 12.) As the Seventh Circuit recognized in *Magdziak v. Byrd*, "[w]e are . . .bound by state rules of [sovereign] immunity regarding state law causes of action." 96 F.3d 1045, 1048 (7th Cir. 1996). The Illinois Court of Claims Act vests the Court of Claims with "exclusive jurisdiction to hear and determine . . . [a]ll claims against the state for damages in cases sounding in tort, if a like cause of action would lie against a private person or corporation in a civil suit . . . ." 705 ILCS 505/8(d). In determining whether a suit is against the state for purposes of this statute, Illinois courts consider whether: (1) there are allegations that the party acted "beyond the scope of his authority through wrongful acts; (2) the duty alleged to have been breached was not owed to the public generally independent of the fact of State employment;" and (3) the actions at issue are typically within the party's official functions. *Healy v. Vaupel*, 133 Ill. 2d 295, 309, 549 N.E.2d 1240, 1247 (Ill. 1990). The Illinois Supreme Court clarified that "[s]overeign immunity affords no protection, however, when it is alleged that the State's agent acted in violation of statutory or constitutional law or in excess of his authority, and in those instances action may be brought in circuit court." *Id.* at 308, 549 N.E. 2d at 1247. Additionally, "malice, if well pleaded, is outside the scope of a State employee's authority" and does not fall under the Court of Claims Act. *Welch v. Ill. Supreme Court*, 322 Ill. App. 3d 345, 356, 751 N.E.2d 1187, 1197 (3d Dist. 2001); *see also Patterson v. Burge*, 328 F. Supp. 2d 878, 887 (N.D. Ill. 2004); *Hughes v. Krause*, No. 06 C 5792, 2008 WL 904898, at *8 (N.D. Ill. Mar. 31, 2008).

Gordon alleges that the Defendant State's Attorneys acted intentionally, maliciously, and

The Defendant State's Attorneys claim that they are also protected by absolute immunity against Gordon's state law claims, including malicious prosecution, conspiracy, intentional infliction of emotional distress, and negligence–wilful and wanton conduct. As Gordon points out, some Illinois cases suggest that absolute immunity is not available for prosecutors when the plaintiff has alleged that the prosecutor acted with malice. *See, e.g.*, *Aboufariss v. City of DeKalb*, 305 Ill. App. 3d 1054, 1064-65, 713 N.E. 2d 804, 812 (2d Dist. 1999) (discussing immunity for a prosecutor and noting that "a public official's actions must fall within the scope of the official's authority and should not be the result of 'malicious motives'") (internal citations omitted). Despite suggesting that prosecutors are only entitled to public official immunity, which does not apply when the official has malicious motives, *Aboufariss* also states that prosecutors acting within the scope of their prosecutorial duties are entitled to the same immunity as the judiciary. *Id.* These inconsistent statements make it unclear whether prosecutors can claim absolute immunity when they are alleged with having malicious motives, as can the judiciary. *See Hughes v. Krause*, No. 06 C 5792, 2008 U.S. Dist. LEXIS 54461, at *4-5 (N.D. Ill. July 17, 2008); *Barham v. McIntyre*, No. 04 C 4027, 2007 U.S. Dist. LEXIS 39063, at *24-25 (S.D. Ill. May 30, 2007).

Few Illinois cases discussing public official immunity involve claims against prosecutors. *See Barham*, 2007 U.S. Dist. LEXIS 54461, at *25. Most of those that do discuss prosecutorial

---

in violation of state law and the Constitution. (*See, e.g.*, Am. Compl. ¶¶ 130, 133, 139, 151.) Although it is arguable that, as in *Welch*, the Defendant State's Attorneys' malicious acts were in furtherance of the State employer's purposes, Gordon alleges that they were for their own purposes. (*Id.* ¶ 71.) Furthermore, because we must read the Complaint in the light most favorable to the Plaintiff at this stage, *Thompson*, 300 F.3d at 753, we find that malice has been adequately alleged. Therefore, we have subject matter jurisdiction over Gordon's state law claims.

immunity for state law claims fail to mention public official immunity and instead reference federal law. *See id.*; *White v. City of Chi.*, 369 Ill. App. 3d 765, 769-71, 861 N.E.2d 1083, 1088-90 (1st Dist. 2006). In *Aboufariss*, an Illinois Appellate Court purportedly applying public official immunity to a prosecutor, held that the prosecutor was immune against the state law claims against him, including a claim of malicious prosecution. 305 Ill. App. 3d at 1064-65, 713 N.E.2d at 812. Federal district are divided on the issue of whether an allegation of malice destroys a prosecutor's claim of absolute immunity. *Compare Hughes*, 2008 U.S. Dist. LEXIS 54461, at *4-5 (granting defendants' motion to reconsider the court's earlier decision and holding that under Illinois law, prosecutors, like judges, are entitled to absolute immunity even when they are alleged to have acted maliciously); *Barham*, 2007 U.S. Dist. LEXIS 39063, at *26 (holding that the Supreme Court of Illinois would extend prosecutorial immunity to willful and malicious conduct); *Jones v. City of Chi.*, 639 F. Supp. 146, 153 (N.D. Ill. 1986) (allowing absolute immunity against a state claim of malicious prosecution) *with Horstman v. County of DuPage*, 284 F. Supp. 2d 1125, 1133 (N.D. Ill. 2003) (refusing to dismiss under 12(b)(6) because plaintiff alleged malice); *Buckley v. County of DuPage*, No. 88 C 1939, 1996 WL 10899, at *6 (N.D. Ill. Jan. 9, 1996) (recognizing that absolute immunity is available to prosecutors only when they act without malicious motives).

The recent trend in these cases is to extend absolute immunity even when the plaintiff alleges malice. Because we find the reasoning of these cases persuasive, we adopt that approach. Quasi-judicial immunity is available to the Defendant State's Attorneys so long as they were acting within the scope of their prosecutorial duties. *Barham*, 2007 U.S. Dist. LEXIS 39063, at *26. As discussed above (*see supra* Part II.A.1.a), we believe that the prosecutors were acting

within those duties.  Therefore, we find that the Defendant State's Attorneys are immune from Gordon's state law claims, Counts VII, VIII, X, and XIII, even those alleging malice.

## C.  Failure to Intervene (Count VI)

Gordon asserts a § 1983 failure to intervene claim against the Defendant State's Attorneys, alleging that they "had a duty to intervene in the unlawful conduct committed by the other Defendant State's Attorneys," that they "knew or should have known of the unlawful conduct," and that they "had a reasonable opportunity to prevent the harm to Gordon but failed to do so."  (Compl. ¶¶ 123-125.)  As the Defendant State's Attorneys point out, the Seventh Circuit has recognized failure to intervene claims against peace officers under § 1983.  *See, e.g.*, *Harper v. Albert*, 400 F.3d 1052, 1064 (7th Cir. 2005); *Yang v. Hardin*, 37 F.3d 282, 285 (7th Cir. 1994).  However, neither the Seventh Circuit, nor any Northern District of Illinois court, has recognized a failure to intervene claim against a prosecutor.  Additionally, Gordon does not cite any cases from any court recognizing this claim.  We decline the opportunity to expand the law to recognize such a claim here.  Even if we were to recognize such a claim, the Defendant State's Attorneys would not be liable for it under absolute immunity.  (*See* Part II.A.)

## D.  Claims Against Cook County (Counts IX and XV)

Gordon attempts to hold Cook County liable under a *Monell* theory and the *respondeat superior* doctrine.  (Compl. ¶¶ 143-48, 187-90.)  Cook County moves to dismiss the claims against it on the grounds that it cannot be held liable for the actions of its state's attorney and his assistants.  (Mem. at 17-19.)  We find that none of Gordon's theories support liability against Cook County.

In *Monell v. Department of Social Services of New York*, 436 U.S. 658, 98 S. Ct. 2018

(1978), the Supreme Court held that a local governmental unit can be directly liable under § 1983 when the "execution of a government's policy or custom" inflicts the constitutional injury at issue in the case. *Id.* at 694. Here, Gordon claims that the Defendant State's Attorneys acted pursuant to Cook County's policies, practices and customs. (Compl.¶¶ 143-48). Cook County argues, however, that because it does not control the State's Attorney's Office and that Office is not accountable to the County, Cook County cannot be liable under *Monell*. (Mem. at 18.) Considering the weight of the precedent, we agree.

In *Ingemunson v. Hedges*, the Illinois Supreme Court held that state's attorneys are state officials. 133 Ill.2d 364, 367-68, 549 N.E.2d 1269, 1271 (Ill. 1990). Other Northern District of Illinois courts have applied this reasoning to *Monell* claims to find that counties are not liable for the misconduct of state's attorneys. *See, e.g.*, *Patterson*, 328 F. Supp. 2d at 899; *Horstman v. County of DuPage*, 284 F. Supp. 2d 1125, 1131-32 (N.D. Ill. 2003); ( Stokes *v. City of Chicago*, 660 F. Supp. 1459, 1462 (N.D. Ill. 1987); *Jones v. City of Chicago*, 639 F. Supp. 146, 154 (N.D. Ill. 1986). Because the State's Attorney's Office is not under the direction of Cook County, Cook County cannot be held liable under *Monell*.

This same reasoning applies to Gordon's attempt to hold Cook County responsible under the doctrine of *respondeat superior*. *See Bigger staff v. Moran*, 284 Ill. App. 3d 196, 198-99, 671 N.E.2d 781, 784 (1st Dist. 1996) (holding that Cook County could not be held liable, as a matter of law, for the misconduct of state's attorneys). Cook County cannot be held liable for the alleged misconduct of the Defendant State's Attorneys under *respondeat superior*. Therefore, the claims against it are dismissed.[12]

---

[12] Defendants have conceded that Cook County could be required to indemnify the Defendant State's Attorneys for any successful claims against them. (Reply at 20.) However,

34

**CONCLUSION**

For the reasons set forth above, we grant in part and deny in part Defendant Officers'

Motion to Dismiss.  Specifically, we grant their motion with respect to Counts XI and XII, and

deny it with respect to Counts IV, V, and VIII.  In addition, we deny their Motion with respect to

Count XIII, but strike the word "Negligence" from that claim.  We also grant the SAO

Defendants' motion to dismiss in its entirety.  Therefore, we dismiss all claims against

Defendants Devine, Shearer, Ertler, Doss, Dalkin, Stack, and Cook County.  It is so ordered.

Honorable Marvin E. Aspen
United States District Judge

Dated: October 14, 2008

---

because we dismiss all claims against the Defendant State's Attorneys, Cook County does not
need to remain a party for indemnification purposes.